THE STATE v. WOOLARD, *Appellant.*

Divison Two, July 1, 1892.

1. **Criminal Law:** PRACTICE: IMPROPER REMARKS OF COUNSEL. It is error for counsel to comment, in argument to the jury, upon facts not in evidence.

2. ———: ———: ALIBI. The burden is on the state, in a criminal case, to show the presence of the defendant at the time and place of the commission of the crime. If the whole evidence on the question of an *alibi* raises a reasonable doubt as to defendant's guilt, he is entitled to the benefit of such doubt, and, therefore, to an acquittal.

The State v. Woolard.

3. ——: ——: ACCOMPLICE: CAUTION BY COURT.  A defendant may be convicted upon the uncorroborated testimony of an accomplice, where the jury is fully satisfied that his testimony is true, but it is the duty of the court to caution them in regard to such testimony.

4. ——: ——: CIRCUMSTANTIAL EVIDENCE: INSTRUCTION.  Where the evidence on a trial for murder is largely circumstantial, the jury should be instructed that the circumstances tending to show guilt should be established by the evidence beyond a rational doubt, and when so established should point so strongly to the guilt of the defendant as to exclude any other reasonable hypothesis.

*Appeal from Butler Circuit Court.*—HON. JOHN G. WEAR, Judge.

REVERSED AND REMANDED.

*Lentz & Standard* for appellant.

(1)   There is not sufficient evidence in this record to warrant a conviction on any of the grades of homicide, and the judgment should be reversed and the defendant discharged.   (2)   The defendant and Brown, being both charged as principals for the commission of the same offense, should have been joined in one indictment if indicted at all.   Revised Statutes, 1889, sec. 4105.   (3)   The witness, Alf. Brown, if he is to be believed at all, is shown by his own as well as other testimony to be a *particeps criminis,* in the commission of the crime, testifying under promise of release from imprisonment and dismissal of prosecution against him. And the jury should have been instructed as to the credit to be given to his testimony under such circumstances.   And for failure to do so the cause should be reversed.   Wharton's Criminal Evidence [8 Ed.] secs. 440, 441, 442; 1 Greenleaf on Evidence [14 Ed.] secs. 380, 381; 2 Russell on Crimes [7 Am. Ed.] side pp. 960–4; *State v. Miller,* 100 Mo. 606; *State v. Chiagk,* 92 Mo. 413; *State v. Reavis,* 71 Mo. 419; *State v. Jones,* 64 Mo. 394; Black's Law Dictionary, p. 16; 1 Russell

on Crimes [7 Ed.] sec. 26; 1 Bishop on Criminal Procedure [3 Ed.] secs. 1159, 1169; Wharton's Criminal Evidence [8 Ed.] sec. 440. (4) The second and third instructions given for the state are not the law, are not supported by the facts proven in this case, are misleading, and tend only to mislead and confuse the jury, and are manifestly prejudicial to the substantial rights of the defendant. Wharton's Criminal Evidence, sec. 333, and cases cited; *State v. Howell*, 100 Mo. 629; *State v. Lewis*, 69 Mo. 92; Bishop on Criminal Procedure, secs. 1061–1068. (5) The instructions, numbered 1, 2, 5, 6 and 7, as asked by the defendant and refused by the court, properly declared the law as applicable to this case, and the refusal to give these instructions was to disregard the right of this defendant to a fair and impartial trial according to the law of the land. 1 Bishop on Criminal Procedure [3 Ed.] secs. 1076–7; *State v. Hill*, 65 Mo. 87; *State v. Carlyle*, 57 Mo. 107; *Clare v. People*, Sup. Ct. Colo. (6) The fourth instruction asked by the defendant and refused by the court was not broad enough, but was correct as far as it went; it was the duty of the court to give correct instructions covering all the law arising on the case. The refusal of the court to instruct on this subject is contrary to all authority, either judicial or textual. Wharton's Criminal Evidence, secs. 440, 441, 442; 1 Greenleaf on Evidence [14 Ed.] secs. 380–1; 2 Russell on Crimes [7 Am. Ed.] side pp. 960–2; *State v. Miller*, 100 Mo. 606; *State v. Chiagk*, 92 Mo. 413; *State v. Reavis*, 71 Mo. 419; *State v. Jones*, 64 Mo. 394.

*John M. Wood*, Attorney General, for the State.

(1) The evidence in this case was not wholly circumstantial. There was an abundance of evidence to

take the case to the jury, and this court will not set aside the finding of a jury when there is any evidence to support the verdict. *State v. Jackson,* 95 Mo. 624. (2) The evidence of Brown was admissible, even though he was an accomplice, and the court committed no error in allowing his testimony to go to the jury, as his evidence was corroborated by the testimony of other witnesses. While this court has held that a jury ought not to convict on the uncorroborated evidence of an accomplice, yet in this case there was corroborative evidence, and Brown's evidence was competent. *State v. Jones,* 64 Mo. 391; *State v. Miller,* 100 Mo. 606. (3) The second instruction given on the part of the state, of which appellant complains, properly declared the law as to the credibility of witnesses, and was as favorable to defendant as to the state. The defendant was in no way prejudiced by this instruction. 73 Mo. 608. The third instruction properly declared the law as to reasonable doubt. *State v. Howell,* 100 Mo. 628; 25 Mo. 111. (4) There was no evidence upon which to base the first and second instructions asked by defendant, and they were properly refused. The other instructions asked by the defendant were in substance included in those given for the state. The court has decided that it is not error to refuse instructions which are mere repetition of those already given. 74 Mo. 271; 72 Mo. 374. (5) The defendant took the stand in his own behalf, and the state had the right to impeach his character for the purpose of affecting his credibility as a witness. 76 Mo. 630; 87 Mo. 642; 88 Mo. 568. (6) It is true that the defendant and witness Brown were both charged as principals in the same offense; but section 4105, Revised Statutes, 1889, says, in express terms, that it is not bad pleading to indict them separately.

GANTT, P. J.—The defendant was indicted at the May term, 1891, of the Butler county circuit court, for the murder of John Yarbrough. At the same term the same grand jury indicted one Alfred Brown for the identical offense. When the cause came to trial the state dismissed the indictment against Brown, and he testified against the defendant.

The evidence tended to prove that John Yarbrough was a single man. He lived on a small farm by himself, in what was known as the Hays settlement, in said county. He was reputed to have considerable money. He was shot twice. One bullet entered his back, just above the hip, and came out through the stomach; the other went in at the hip and came out in front of the leg. The evidence further tended to prove that Yarbrough was killed while plowing in his field.

The defendant Woolard lived eight or nine miles from Yarbrough, and had lived there for eight or nine years. F. M. Maberry testified that he never heard defendant speak of Yarbrough's death, except in a casual way, until one Bayliss was arrested on a charge of the murder; defendant then said, "he was afraid Brown would give it all away, and, if he did, it would break our necks; that, before Bayliss should be hurt, he would have his own neck broken, because Bayliss was innocent." Defendant was generally short of money, but after Yarbrough's death he told Maberry he had $150. He said it was marked, and he was afraid to use it.

It was not shown Yarbrough really had any money. The constable, Jonas, testified that after he had arrested defendant on this charge defendant said that before Bayliss should suffer he would have his own neck stretched; that Bayliss was an innocent man. He said Brown ought to have told it all. He

wanted to make complaint against Brown. After the complaint was written he refused to sign it. He said he understood Brown had given the whole thing away, and if he had it would break their necks. Bates and Cato heard the statement.

Matthew Wallace testified he had known defendant all his life. Never heard him say anything about Yarbrough's death since the killing. Before that, heard him say, "Two men could make some money by killing and robbing such men as Yarbrough and then go out west." He disclosed this conversation to the state about one half hour before he testified.

John Brown testified they found Yarbrough dead on the sixteenth of May. Buried him on the seventeenth.

Alfred Brown, who had been indicted for the same offense, testified as follows: "I live in Ash Hill; knew John Yarbrough; I know Dave Woolard; I saw Yarbrough when he was shot; Dave Woolard shot him; fired two shots; he had a rifle; don't know the name of it; can't tell the time of the day; it was one or two o'clock. Yarbrough was in the field, about one hundred and fifty yards from the fence, when shot. Woolard was on the outside when he fired. When the second shot was fired he fell. When we left home he said he was going to look for a red cow. He said nothing about killing of Yarbrough until he got close to the field, then he said he was going to kill him. At first shot he kind of turned 'round, scringed down and looked. At second shot he fell. After second shot Woolard turned and walked off. He said if I ever told it he would do me the same way. Yarbrough's back was to Woolard when he shot; he was at his place, plowing, going from us."

Cross-examination: "I have been indicted for killing Yarbrough myself; I was in the prosecuting

attorney Scott's office this morning. Mr. Scott said if I would swear against Woolard he would release me and turn me out of jail. I have made other statements about the killing of Yarbrough. I told Sam Gardner that Woolard did not do it, but Horace Bates did. I also said that Bayliss killed him. I do not make this statement for my release. I told Lee Duncan that Bayliss killed the deceased, and that Woolard did not. Horace Bates did not tell me that if I would swear that Woolard did the killing, and that Bayliss did not, he would bail me out of jail. I told parties that Bates had told me to swear that Woolard did it. Woolard told me to tell it. I told that to Lee Duncan and Sam Gardner. Woolard came to my house to get me to go and look for a cow the morning Yarbrough was killed. It was on Tuesday morning, last year. I told Edwards that I could claim one shot. I never told J. W. Hicks that I fired the first shot and Woolard the second shot. We went home from Yarbrough's field; we went through the woods. We ate supper at my house after we got home. I told Davidson and Keaton, my attorneys, that Woolard had nothing to do with the killing of Yarbrough, but that Horace Bates did the killing.''

Re-examination: ''David Woolard got me to make the statement that Bates did the killing. He made me do it.''

There was also evidence that defendant broke jail and fled.

At the close of the state's case, the defendant offered evidence of George A. Neal and himself to prove an *alibi*. If credible it tends very strongly that way. The general reputation of witnesses, Alf. Brown, and the defendant and Maberry, for truthfulness was attacked, and Brown's reputation was shown to be very bad indeed. The court gave a proper instruction defining murder in the first degree. In the second

instruction for the state the court gave this declaration of law: "The court instructs the jury that when the defense of an *alibi* is relied upon in a criminal case (that is, that the accused was at some other place than the scene of the alleged criminal act at the time of its commission) it rests upon the defendant to establish such fact to the reasonable satisfaction of the jury."

The court refused the following instructions asked by the defendant: "1.  The court instructs the jury that in order to convict the defendant upon circumstantial evidence, alone, the circumstances tending to show his guilt should be established beyond a rational doubt by the evidence in the cause, and when so established should point so strongly to the guilt of the defendant as to exclude any other reasonable hypothesis than that of guilt."

"4.  The court instructs the jury that the testimony of parties aiding, assisting, encouraging and abetting the crime is admissible, yet their evidence, when not corroborated by the testimony of others not implicated in the crime, as to matters material to the issue, ought to be received with great caution by the jury, and they ought to be fully satisfied of its truth before they should convict the defendant on such testimony."

Defendant was convicted of murder in the first degree, and has appealed therefrom.

I.  In the argument of the cause, Mr. Chapman, who was assisting in the prosecution, in answer to the criticism of defendant's counsel of the prosecuting attorney, based on Alf. Brown's statement that, "if he would '*swear against Woolard*,' he would turn him loose," said: "Mr. Scott told the witness Brown that all he wanted was the truth.  *  *  *  Scott made no promise to the witness Brown to induce him to testify." This was highly improper. It was not in evidence.

It is exceedingly probable that it is true, but Mr. Scott should have gone on the stand and testified to the fact, if it was permissible; but, even if it was not, it would not justify counsel in stating it, even though the court had refused to let him testify. *Haynes v. Town of Trenton*, 108 Mo. 123.

II.  The court's instruction as to the burden of proof on the *alibi* was erroneous. This point was determined in this court in an elaborate opinion by RAY, C. J., in *State v. Howell*, 100 Mo. 628. The burden is on the state. The presence of the defendant at the necessary time and place must be shown as essential to the commission of a crime. If the defendant's evidence is sufficient to raise a reasonable doubt, or if the state's evidence is so defective as to raise a reasonable doubt, or if taking all the evidence on both sides there is a reasonable doubt, of the defendant's guilt, he is entitled to an acquittal. *People v. Fong Ah Sing*, 64 Cal. 253.

III.  The court clearly erred in refusing defendant's fourth instruction. While a jury may convict upon the uncorroborated testimony of an accomplice, it is clearly the duty of the court to caution them in regard to such testimony. The impeachment of the witness, Alf. Brown, in this case, was so overwhelming, in addition to his being an accomplice, it was peculiarly incumbent on the trial court to caution the jury in regard to convicting the defendant, for so grave an offense, upon his uncorroborated evidence. *State v. Harkins*, 100 Mo. 666; *State v. Jackson*, 106 Mo. 174.

IV.  The court should have given the defendant's first instruction. If the jury should refuse to believe the witness, Alf. Brown, the case is one largely of circumstantial evidence, and that instruction is proper and necessary. *State v. Moxley*, 102 Mo. 374.

For these errors the judgment is reversed and the cause remanded for a new trial. All concur.