State v. Donnelly.

---

THE STATE v. DONNELLY, *Appellant.*

Division Two, November 19, 1895.

1. **Criminal Practice**: MURDER: INSTRUCTION. Where, on a trial for murder, the evidence tends to show that deceased and defendant had been drinking on the day of the homicide, and that afterward, while walking together, defendant, without provocation, struck the deceased a fatal blow from behind, an instruction on murder in the first degree is proper.

2. ———: ———: ———. "Deliberately" means the doing of an act in a cool state of the blood, not in a sudden passion engendered by a lawful, or some just, cause of provocation. (*State v. Ellis*, 74 Mo. 220.)

3. ———: ———: ———. Where the evidence tends to show that the motive which induced the killing was robbery the jury are properly instructed on murder in the first degree.

4. ———: ———: ———. The omission of the trial court to instruct that the indictment does not constitute evidence against the defendant is not reversible error.

5. ———: ———: ———: CIRCUMSTANTIAL EVIDENCE. Where the evidence is direct and positive that the defendant committed the homicide it is not necessary to instruct on the weight and conclusiveness of circumstantial evidence.

6. ———: ———: ———: ACCOMPLICE. An instruction that the jury may convict on the uncorroborated testimony of an accomplice if his statements are believed to be true in fact, but that such statements when uncorroborated as to matters material to the issue ought to be received by the jury with great caution, is proper.

7. ——: ——: ——: ——. Even in the absence of evidence that an accomplice struck deceased it was harmless error to charge that defendant could be convicted if the accomplice struck the fatal blow in pursuance of a common purpose, the evidence showing that the defendant struck the blow.

8. ——: ——: EVIDENCE. The finding of the purse of deceased near the place of the homicide a day or two thereafter is admissible to prove robbery as the motive of the crime.

9. ——: ——: ——. A record of a conviction for gambling is not admissible for the purpose of discrediting a witness.

*Appeal from Audrain Circuit Court.*—HON. E. M. HUGHES, Judge.

AFFIRMED.

*Edmonston & Cullen* for appellant.

(1) The court erred in failing to instruct upon all questions of law; in giving instructions not warranted by the evidence and in giving illegal instructions. *State v. Taylor*, 118 Mo. 153; *State v. Welsor*, 118 Mo. 124. (2) The jury should have been instructed on murder in the second degree. *State v. Williams*, 69 Mo. 112; *State v. Dierberger*, 96 Mo. 666; *State v. Wieners*, 66 Mo. 13. (3) The court should have instructed that the indictment constituted no evidence against defendant. *State v. Brown*, 115 Mo. 409; *State v. Duncan*, 116 Mo. 302. (4) The court erred in refusing to give instructions A, B, and F asked by defendant. (5) There was no evidence tending to show that McKinney struck the blow and the instruction given by the court based on that theory was erroneous. The mere fact that the accomplice and defendant were together is no evidence of a common criminal purpose. *State v. Kempf*, 26 Mo. 429; *State v. Ross*, 29 Mo. 32; *State v. Flanders*, 118 Mo. 237. (6) The court erred in submitting the case to the jury upon the uncorroborated testimony of an accomplice.

*R. F. Walker,* attorney general, and *Morton Jourdan,* assistant attorney general, and *J. G. Trimble* for the state.

(1) The motion for a new trial was properly overruled. (2) The instructions properly stated the law, and cover all the facts of the case. *State v. Ellis,* 74 Mo. 220; *State v. Wieners,* 66 Mo. 13; *State v. Dawson,* 124 Mo. 422; *State v. Woolard,* 111 Mo. 228. (3) The instructions refused by the court were properly refused.

Burgess, J.—From a conviction of murder in the first degree for killing one Samuel Turner, on the twenty-eighth day of July, 1893, in Audrain county, defendant appealed. The motive for the assault seems to have been robbery.

The murder is charged to have been committed on the night of July 29, 1893. About two o'clock on that morning deceased was found lying unconscious on a side track of the Chicago & Alton railroad in the city of Mexico in said county. One of his pants pockets was turned wrong side out. He had no money or other property about his person. He was carried to the city prison, in which he was found dead about 6 o'clock the same morning. On a *post mortem* examination his skull or right temporal bone was found to be fractured, causing the blood to clot on the brain, producing paralysis resulting in his death.

During the evening before the homicide deceased, one William McKinney, and defendant spent the evening in drinking intoxicating drinks. Deceased had a small sum of money the day before his death, of which defendant and McKinney had knowledge, as they had been drinking together from a tin bucket, the beer being purchased and paid for by deceased. They remained together drinking beer a large portion of the

day, and were seen together as late as 12 o'clock at night, when they were seen going south near the depot. Soon after that time three men suiting their description were seen about the place where deceased was found on the railroad track. The tin bucket from which deceased, McKinney, and defendant had been drinking beer was found east, and near, where deceased was found, and subsequently a pocketbook, shown to have belonged to him, was found some two blocks away. None of his property or money was found on the person of defendant. McKinney and defendant were separately indicted for the murder.

Upon the trial McKinney was introduced as a witness on the part of the state, and testified that, after 12 o'clock on the night of the homicide, he, deceased and defendant went near to and beyond the spot where deceased was found, then turned back and were all walking close together on the railroad track, he with his left hand resting on the right arm of deceased, and defendant close to them in the rear, when he heard a blow, and, turning, saw deceased fall; that defendant then struck at deceased again and jumped down toward him, and then both he and defendant left and went south; that defendant said nothing to him about the assault before nor after it was committed, and that it was a surprise to him; that shortly after it occurred he and defendant returned and found deceased moving around, when defendant remarked: "Oh, he is not hurt;" that he stayed with defendant from that time until near 10 o'clock that morning, at the fair grounds, one mile from town. He also stated that he knew nothing about the pocketbook or money of deceased.

There was some evidence tending to show that defendant was at the depot and electric light house that morning when the 3 o'clock train arrived.

The court instructed the jury for murder of the

first degree only, and defendant's first contention is that in so doing, it committed error; that it should have instructed for the "lesser grades of homicide," and especially for murder in the second degree. This contention is unquestionably correct, provided there was evidence upon which to predicate such an instruction or instructions, otherwise it is not. While section 4208, Revised Statutes, 1889, makes it the duty of the trial court to instruct the jury in writing upon all questions of law arising in the case on trial, whether asked to do so or not, it is only upon such questions of law as arise in the case that instructions are required.

It seems from the instructions that the case was submitted to the jury upon two different theories, one that the murder was willful, deliberate, and premeditated, the other that the homicide was committed in the perpetration or attempt to perpetrate robbery.

As to whether the murder was committed deliberately, premeditatedly, and with malice aforethought, were questions for the jury, under proper instructions, providing there was evidence to support that view of the case. And we think there was. Defendant and deceased had no difficulty before the homicide, and while walking quietly along the railroad track, having no reason whatever to expect any violence to his person at the hands of defendant, the latter, whom he knew was close behind him, with a blow inflicted by some instrument broke his skull, from the effects of which he shortly thereafter died. The homicide could not have been more deliberate had the defendant laid in wait for his victim, and then assaulted and killed him. There was nothing to reduce the homicide to murder in the second degree.

The definition of deliberately, as defined by the court, is criticised by defendant. It is as follows:

"'Deliberately' means done in a cool state of the blood, not in sudden passion engendered by a lawful or some just cause of provocation, and the court instructs the jury that in this case there is no evidence tending to show the existence of any such passion or provocation."

This definition is in the exact words in which it is said, in *State v. Ellis*, 74 Mo. *loc. cit.* 220, a jury may be instructed, and is commendable for its clearness and brevity, in case there is no evidence tending to show the existence of sudden passion. The authority of that case upon the question has never been questioned, so far as we are advised.

Section 3459, Revised Statutes, 1889, provides that every *homicide* which shall be be committed in the per-·petration or attempt to perpetrate any robbery shall be deemed murder in the first degree. The question is as to whether there was any evidence to justify the court in instructing the jury upon that theory of the case? That there was, we think clear. There was no quarrel or disagreement between defendant and deceased before the latter assaulted him and knocked him down with a deadly weapon. On the contrary, they seem to have been good friends, spending the evening in excessive drinking and dissipation. There was, so far as the record discloses, no other motive for the homicide than robbery, which the evidence tends to show, and which under our statutes is made murder in the first degree and nothing else. Hence, nothing from this standpoint upon which to predicate an instruction for murder in the second degree, or for any of the degrees of manslaughter.

It is argued by defendant that proof of willful and intentional killing, will not alone raise the presumption of murder in the first degree; that the jury might have believed that the killing was not for the purpose of rob-

bery, and from the proof of the killing alone, defendant could have been found guilty of murder in the second degree. But, as has been seen from the facts and circumstances attending the homicide, as before stated, there was nothing upon which to rest that theory of the case. The jury were instructed that if they believed from the evidence, beyond a reasonable doubt, that defendant struck and killed deceased with a deadly weapon, with intent to rob him, they would find him guilty of murder in the first degree. In such circumstances the killing was murder in the first degree, whether done deliberately or otherwise.

In *State v. Meyers*, 99 Mo. 107, SHERWOOD, J., in speaking for the court, said: "The perpetration, or the attempt to perpetrate, any of the felonies mentioned in the statutes, during which attempt, etc., the homicide is committed, stands in lieu of, and is the legal equivalent of, that premeditation, deliberation, etc., which otherwise are the necessary attributes of murder in the first degree."

It is also contended that the court should have instructed the jury that the indictment was no evidence against the defendant. While this court has repeatedly approved the giving of such an instruction (*State v. Brown*, 115 Mo. 409; *State v. Duncan*, 116 Mo. 302; *State v. Howell*, 117 Mo. 307; *State v. Moxley*, 102 Mo. 374), it has never held that it was error to fail to instruct in this regard, as such an instruction could have no possible bearing on any issue of law involved in a criminal case, and is, at most, nothing more than an abstraction, which could not in any way have affected the result of the trial.

As there was no evidence upon which to predicate instructions A, B, C, and F, asked by the defendant, there was no error committed in refusing them. There was no evidence tending in the remotest degree to show

that any person other than defendant committed the homicide. Moreover, the motive for so doing by defendant was shown by the evidence to be that of robbery.

It is insisted that the prosecution relied upon circumstantial evidence to convict the defendant, and that the court should have instructed the jury with reference to the weight and conclusiveness of such evidence Such an instruction would not have been applicable to the facts of the case, for the reason that there was direct and positive evidence that defendant committed the homicide, and it is only when conviction is sought on circumstantial evidence *alone* that such an instruction becomes necessary. . *State v. Robinson,* 117 Mo., *loc. cit.,* 663; *State v. Moxley,* 102 Mo. 374; *State v. Maxwell,* 42 Iowa, 208.

In *State v. Woolard,* 111 Mo. 248, chiefly relied upon by defendant to sustain his contention, there was positive evidence of the homicide by an accomplice, as in the case at bar, and it was held that the court should have instructed the jury as to circumstantial evidence; but an examination of that case will show that the ruling in this regard was based upon the fact that the evidence of the accomplice showed him to be unworthy of belief, and his testimony entitled to no credit whatever. Not so in the case in hand, for, while McKinney was also indicted for the same offense, and the evidence tended to show him to have been an accomplice of defendant in the commission of the robbery and homicide, it corroborated him in a number of important circumstances connected with the killing.

The state's fifth instruction is as follows:

"The court instructs the jury that they are at liberty to convict the defendant on the uncorroborated testimony of an accomplice alone, if they believe the statements as given by such accomplice in his testimony are true in fact and sufficient in proof to establish the

guilt of defendant. But the jury are instructed that the testimony of an accomplice in crime, when not corroborated by some person or persons not implicated in the crime, as to matters material to the issues, that is, matters connecting the defendant with the commission of the crime charged against him and identifying him as the perpetrator thereof, ought to be received with great caution by the jury, and they ought to be fully satisfied of its truth before they should convict the defendant on such testimony."

There are a number of objections urged against this instruction, but they seem to be without merit. It is in the usual form, and has often met with the approval of this court. *State v. Dawson*, 124 Mo. 422; *State v. Chyo Chiagk*, 92 Mo. 395; *State v. Crab*, 121 Mo. 554; *State v. Jackson*, 106 Mo. 179; *State v. Harkins*, 100 Mo. 666; *State v. Woolard*, 111 Mo. 248.

The eighth instruction, given on the part of the state, was to the effect that, if the jury believed from the evidence that there was a common purpose and design on the part of the defendant and the witness McKinney to rob deceased, and, in pursuance thereof, either of them struck him and killed him, they would find the defendant guilty, as charged, even though McKinney struck the blow. The vice of the instruction is the want of evidence in so far as McKinney is concerned upon which to bottom it. There was no evidence that he inflicted the blow that caused the death of Turner. Upon the contrary, the evidence showed that defendant inflicted it. Moreover, McKinney was not connected with the homicide in so far as appears from the indictment. This instruction should not have been given in the form that it was given, and is "presumably prejudicial," but as it is manifest from the facts in proof that the defendant could not possibly have been prejudiced thereby, the judgment should not be reversed on

that ground alone.   Had the evidence shown that Mc-
Kinney inflicted the blow that killed Turner, then there
might have been some ground for defendant's conten-
tion, but in the absence of such proof we think his
position untenable.

There was no error in permitting the witness, Hook,
to testify to finding the pocketbook of deceased near
the spot where he was found lying unconscious, a day
or two next thereafter.   It was empty and was a cir-
cumstance tending to show that he had been robbed.
The same may be said with respect of the evidence of
the witnesses James, Fox, and Harris, who testified that
deceased had money on his person the day before his
death; it was an important factor in the chain of the
state's evidence.

Nor was there error in excluding the record of the
convictions of the witness Swan for gambling, for the
purpose of discrediting or impeaching him.   The con-
victions were not for infamous crimes, and were not, for
that reason, admissible for the purpose of impeaching
his credibility as a witness.   Such evidence was imma-
terial.   Had the convictions been for crimes which
rendered the witness infamous, doubtlessly the record
would have been admitted for the purpose for which
they were offered.   It would be a harsh rule, indeed,
which would render a witness infamous simply because
of his conviction of a penal offense, which may not be
inconsistent with a general good character.   *State v.
Smith*, 125 Mo. 2; *State v. Taylor*, 98 Mo. 240; *State v.
Warren*, 57 Mo. App. 502.

There are a number of other points raised in the
brief of counsel for defendant, that we have not over-
looked, which are wholly without merit.   We have
given the questions presented our careful consideration,
and, finding no reversible error in the record, affirm
the judgment.   All of this division concur.