State v. Sprague.

THE STATE v. WESLEY SPRAGUE, Appellant.

Division Two, May 9, 1899.

1. **Larceny and Burglary**: INSTRUCTION AS TO VALUE OF GOODS. Under Revised Statues 1889, section 3529, providing that where a person committing a burglary also commits a larceny, both offenses may be prosecuted by one indictment, and a stated punishment shall be assessed for the larceny in addition to the punishment imposed for the burglary; and section 3535, making the stealing of property of over $30 in value grand larceny, an instruction, in a prosecution for burglary and larceny, that if, in connection with the burglary, property of any value was stolen, accused may be convicted of larceny, and, if no burglary was committed, but property of the value of $30 or more was stolen, accused may be convicted of grand larceny, is correct, since the value of the property is material only where no burglary was committed in connection with the larceny.

2. ———: INSTRUCTION: "ANY OF THE GOODS CHARGED." Where the jury has been told to convict accused if he stole any of the goods charged in the indictment, a further instruction to the same effect, which uses the term "any of the goods . . . . . . . in the building" is not erroneous, since it would not be misunderstood.

3. ———: PROOF OF BOTH: ACQUITTED OF BURGLARY. Error, if any, in permitting proof of the burglary of a warehouse, and larceny therefrom, under an indictment for burglary in and larceny from a storehouse, is harmless where accused is acquitted of burglary and convicted of larceny.

4. ———: VARIANCE BETWEEN "STOREHOUSE" AND "WAREHOUSE." There is no variance where the indictment describes the place of the burglary and larceny as a "storehouse," and the evidence shows that it was a "warehouse," the two terms being synonymous.

5. ———: ACCOMPLICE'S TESTIMONY: SUFFICIENCY. An accomplice testified that accused came to him during the night the larceny was committed, and told him that they had made a raid, and had placed the goods in his store. Witness went with accused to the store, where he found the goods as stated by accused, and they hid them on his premises. The accomplice's wife testified that accused came to their house on the night in question, and went away with her husband, and the goods were found in accomplice's store soon after the commission of the larceny. *Held* to warrant a conviction.

6. ———: FAILURE TO INSTRUCT FOR PETIT LARCENY. The only evidence of the value of the goods having been that they were worth not less than $40, an instruction on petit larceny was unnecessary.

7. ———: ———: NO EXCEPTIONS. Error in failing to instruct on petit larceny in a prosecution for larceny is waived by failure to except because the charge does not fully cover all questions of law and fact.

8. ———: EVIDENCE OF ACCOMPLICE: INSTRUCTION. An instruction that the evidence of an accomplice should be considered with great caution, but, if the jury be satisfied of its truth, they may convict thereon, though uncorroborated, is erroneous in not informing the jury what is meant by corroboration.

9. ———: ———: UNCORROBORATED: INSTRUCTION. While a conviction may be had on the uncorroborated testimony of an accomplice, yet his testimony, when not corroborated by a person not implicated in the commission of the offense, as to matters connecting accused with the commission of the crime, should be received with great caution, and the jury ought to be fully satisfied of its truth before convicting accused on it alone.

10. ———: STATEMENTS OF JUROR: OTHER CRIMES. An affidavit that, to affiant's best knowledge and belief, a juror, while deliberating, told the jury, as of his own knowledge, that accused had committed another similar crime, is insufficient to impeach a verdict of guilty.

11. Separation of Jury: AFTER AGREEMENT. After the jury in a criminal case had agreed, and while waiting to be brought into court to return their verdict, a juror separated from the rest, but after an interval of five minutes he was brought back to the jury room by the sheriff. *Held* not prejudicial misconduct.

*Appeal from Dent Circuit Court.*—HON. L. B. WOODSIDE, Judge.

REVERSED AND REMANDED.

L. JUDSON and WM. P. ELMER for appellant.

(1) The court erred in giving instruction number 1 for the State. (a) It tells the jury that defendant could be found guilty of larceny if he stole "any goods, wares and merchandise" from said building while he was only punishable for stealing such as were charged in the indictment and proven to have stolen therefrom. State v. Babb, 76 Mo. 503; State v. McGraw, 74 Mo. 574; State v. Taylor, 111 Mo. 541. (b) Nor does the giving of instruction number 7 on part of defendant cure the error in number 1 for the State. In number 7 the jury are told to convict if they believe defendant stole "any of the goods, etc., charged in the indictment;" in number 1 they are told to convict if they believe he stole "any of the goods, etc., in the building." They are inconsistent and irreconcilable, and the latter, though correct, would not cure the former. State v. Cleavenger, 25 Mo. App. 654; State v. Herrett, 97 Mo. 105; State v. Cable, 117 Mo. 386; State v. Brumley, 53 Mo. App. 130; State v. Taylor, 118 Mo. 153. (c) Of two conflicting instructions it can not be said which one the jury took for guidance. State v. Herrett, 97 Mo. 105. (2) The court erred in failing to instruct on petit larceny. There was absolutely no proof showing the value of the goods charged in the indictment and identified by Guild, Fraser or Dye to be of $30, or for that matter to be of any value whatever. Where it is doubtful if the value of the stolen goods will reach $30, the court should instruct on petit larceny, and not to do so is error. State v. Thompson, 130 Mo. 620; State v. Norman, 101 Mo. 520; State v. Clark, 89 Mo. 423. (3) The

jury were in possession of facts not introduced in evidence in the case. Although affiant was unable to state the name of the juror who made such statement and argued same in support of his views, yet it showed a misconduct on the part of the juror and that he might have made a better witness than juror. R. S. 1889, sec. 4269. (4) The new trial should have been granted on the separation of the jury. The statute commands that they shall be kept together after retiring to deliberate upon their verdict, and that any separation so that outside influence could be brought to bear upon a juror after so retiring is grounds for new trial. The mere fact of separation constitutes the grounds. R. S. 1889, sec. 4269; State v. Steifel, 106 Mo. 134; State v. Orrick, 106 Mo. 124; State v. Howland, 119 Mo. 420. And the State does not have the right to inquire beyond the separation or whether outside influences were in fact brought to bear on such separated juror or not, as they have in cases where the separation occurs before retiring to deliberate. State v. Orrick, 106 Mo. 126; State v. Howland, 119 Mo. 420. A verdict might be agreed upon, signed by the foreman, and afterwards a juror separate from his fellow jurors, return with a contamination of outside influences and refuse to abide by the verdict, or return into court with the jury, or when the same is "polled" say the verdict is not his. State v. Orrick, 106 Mo. 124; State v. Steifel, 106 Mo. 134; State v. Howland, 119 Mo. 420; State v. Sansone, 116 Mo. 1. (5) The instruction on accomplices was error. It should have told the jury that they should be fully satisfied of the truth of Guild's testimony; and then if fully satisfied of its truth, and convinced of defendant's guilt beyond a reasonable doubt, they were at liberty to convict the defendant— and not warranted. State v. Minor, 117 Mo. 302; State v. Crab, 121 Mo. 554; State v. Dawson, 124 Mo. 418; State v. Harkins, 100 Mo. 666; State v. Donnelly, 130 Mo. 642.

State v. Sprague.

EDWARD C. CROW, Attorney-General, and SAM B. JEF-
FRIES, Assistant Attorney-General, for the State.

(1)    The instructions must be taken as a whole and
when the instructions fairly submit the case upon the whole
evidence and the evidence clearly supports the verdict, the
judgment will not be reversed because of a seeming conflict
in the instructions.    State v. Taylor, 109 Mo. 676; Barry v.
Railroad, 98 Mo. 62; Harrington v. Sedalia, 98 Mo. 586;
Baker v. Railroad, 122 Mo. 551; Ins. Co. v. Hauck, 83 Mo.
21; Macbeth v. Craddock, 28 Mo. App. 394; Hanna v. Bay-
lor, 27 Mo. App. 302; Karle v. Railroad, 71 Mo. 203.    That
which is omitted in one instruction may be supplied by
another and if the whole are consistent and correct, it is
sufficient.    Roose v. Clark, 14 Mo. App. 594; Sappington v.
Railroad, 14 Mo. App. 86; Deweese v. Meramec Iron Co., 54
Mo. App. 476; Deweese v. Meramec Iron Co., 28 Mo. 423.
If the defects or omissions in one instruction are supplied in
another and they are both consistent and not misleading in
their tendency, the error in the first is remedied and no error
is committed.    60 Mo. 323; State v. Taylor, 118 Mo. 153;
Crawford v. Dopler, 120 Mo. 362.    (2)    The affidavit of the
sheriff, J. L. Chambers, shows the jury did not separate, but
was kept together under his charge.    That, after they had
agreed on a verdict, the sheriff started to inform the court
and before he had gotten one hundred yards from the court
house, he was informed one of the jurors had gone to the
water closet.    That he immediately went back, found the
juror and took him back to the jury room and that im-
mediately the jury returned their verdict without any more
deliberation.    The statute forbidding the separation of the
jury is mandatory, but it should be given a practical construc-
tion to accomplish the purpose intended, which was to pre-
vent the jury from coming in contact with other persons,
without necessarily interfering with the course of the

proceedings. 91 Mo. 95; 90 Mo. 220; 95 Mo. 129; 86 Mo. 245. But where a juror leaves the room without consent of the court, upon an urgent necessity of nature, and no attempt is made to tamper with him and nothing occurs to influence him, the separation under such conditions is no ground for a new trial. 8 Mo. 165; 91 Mo. 576; 5 Mo. 525; 1 Mo. 585; 20 Mo. 397; 106 Mo. 129. (3) Under any circumstances it requires the clearest proof of misconduct on the part of the jury or some member of it to justify the setting aside of their verdict. The mere statement by one in an affidavit of his impression of improper conduct will not be sufficient. 41 Miss. 291; Thompson & Merriam on Trials, secs. 436 and 437. (4) The instruction on accomplices was correct. State v. Jones, 66 Mo. 391; State v. Walker, 98 Mo. 95; State v. Chyo Chiagk, 92 Mo. 413; State v. Reavis, 71 Mo. 420; State v. Kilgore, 70 Mo. 546; State v. Andrew, 76 Mo. 101. (5) The words "warehouse" and "storehouse" were used in section 3426, Revised Statutes 1889, to denote any place where goods, wares and merchandise were kept stored or deposited, or sold or both. The words "store" and "storehouse" in England is never applied to a place where goods are sold, only to the place where they are deposited. But in this country, the words denote both a place where goods are sold as well as deposited. Anderson's Law Dic., p. 979; 18 Conn. 440.

SHERWOOD, J.—Defendant was awarded three years in the penitentiary as and for punishment of larceny of goods, wares and merchandise of the Dent County Mercantile Company.

The indictment so far as necessary to quote is the following:

"Upon their oaths do present and charge, that Wesley Sprague and Jack Sprague on the ——— day of April, 1898, at and in Dent county and State of Missouri, did then and

there unlawfully, feloniously and burglariously break into and enter the storehouse of the firm of the Dent County Mercantile Company (a corporation duly incorporated under the laws of the State of Missouri, there situate the same being a storehouse and building in which divers goods, wares and merchandise and valuable things were then and there kept for sale and deposited, with intent the said goods, wares and merchandise in said storehouse then and there being found, then and there unlawfully, feloniously and burglariously to steal, take and carry away; and two certain dark colored overcoats of the value of $8; one small overcoat of the value of $5; one ladies brown jacket of the value of $6; one ladies blue jacket, silk lined, of the value of $8; one ladies black jacket of the value of $8; one sack of roasted coffee of the value of $18; one hundred pounds of flour of the value of $2.80, all of the aggregate value of $55.80, of the personal goods and chattels of the said firm of the Dent County Mercantile Company, then and there in said storehouse and building being found, did then and there unlawfully, feloniously and burglariously steal, take and carry away; against the peace and dignity of the State."

A demurrer to the evidence on Jack Sprague's part was held well taken, and the cause proceeded alone against Wesley, the father.

1. The first instruction given at the instance of the State is as follows: "The court instructs the jury that if you believe and find from the evidence that the defendant, Wesley Sprague, at and in the county of Dent and State of Missouri, on the night of the 9th day of April, A. D. 1898, did willfully and unlawfully break into and enter a certain storehouse, and if the said storehouse was at the time and place aforesaid in the possession of the Dent County Mercantile Company, a corporation organized under the laws of the State of Missouri, and if the said defendant broke into and entered the said store building, at the time and place afore-

said, with the intent then and there to take, steal and carry away, and convert to his own use, and deprive the owners of the use thereof, of any valuable goods, wares and merchandise situate, kept and deposited in the said building, then you will find him guilty of burglary and assess his punishment at imprisonment in the penitentiary for a term not less than three years.   And if you further believe and find from the evidence that this defendant, Wesley Sprague, at the time and place aforesaid, did willfully and feloniously steal, take and carry away from within said building with intent to convert to his own use and deprive the owners of the use thereof, any goods, wares and merchandise of any value whatever, and if such goods, wares and merchandise was then and there the property of the Dent County Mercantile Company, a corporation as aforesaid, you will also find him guilty of larceny, and assess his punishment for such larceny at imprisonment in the penitentiary for not less than two nor more than five years."

Instruction number 7, also given on behalf of the State, told the jury that: "Although you may not believe and find from the evidence that the defendant broke into and entered the building in question, yet, if you find and believe from the evidence that the defendant, Wesley Sprague, on the night of the 9th day of April, 1898, at and in the county of Dent and State of Missouri, did willfully and feloniously take, steal and carry away any of the goods, wares and merchandise charged in the indictment, with the intent to convert the same to his own use, and to deprive the owners of the use thereof, and if said goods, wares and merchandise you may find to have been so taken by defendant, if you find they were so taken by him, were of the value of thirty dollars or more, and were at the time and place aforesaid, the property of the Dent County Mercantile Company, a corporation organized under the laws of Missouri, you will find him guilty of larceny and assess his punishment at imprisonment in the

State penitentiary for a term of not less than two nor more than five years."

Section 3529, Revised Statutes 1889, declares that: "If any person in committing burglary shall also commit a larceny, he may be prosecuted for both offenses in the same count, or in separate counts of the same indictment, and, on conviction of such burglary and larceny, shall be punished by imprisonment in the penitentiary, in addition to the punishment hereinbefore prescribed for the burglary, not less than two nor exceeding five years."

Section 3535, Revised Statutes 1889, provides that: "Every person who shall be convicted of feloniously stealing, taking and carrying away any money, goods, right of action, or other personal property or valuable thing whatsoever, of the value of thirty dollars or more, or any horse, mare, gelding, colt, filly, ass, mule or neat cattle, belonging to another, shall be deemed guilty of grand larceny; and dogs shall, for all the purposes of this chapter, be considered personal property."

It is asserted that the instructions already quoted are in conflict with each other. But this is a mistake. Under the provisions of section 3529, *supra*, if both burglary and larceny are committed at the same time, then the value of the property stolen is immaterial. [State v. Barker, 64 Mo. 282; State v. Henley, 30 Mo. 509.]

And it was to meet the provisions of that section that instruction number 1 was drafted. And it was properly drafted, since the finding of defendant guilty of larceny if the goods stolen were of any value, was expressly conditioned upon a burglary having been the predecessor of the larceny.

If, however, no burglary is committed, but only larceny, then that larceny is to be measured by the value of the articles stolen; if $30 or upwards in value, then it is grand larceny, punishable by imprisonment in the penitentiary; if under $30

(unless the property is one of the animals enumerated in section 3535, as needing no valuation), then it is petit larceny and punishable under the provisions of section 3547, Revised Statutes 1889.

Under this view it will readily be seen that there is no conflict whatever between the instructions mentioned, they being simply framed to meet the exigencies occurring at the trial.

And there is no merit in the point that instruction 1 speaks of defendant stealing "any of the goods, etc., in the building;" while instruction 7 tells the jury to convict if they believe defendant stole "any of the goods, etc., charged in the indictment." It was not necessary in every instruction to tell the jury that they were trying defendant for stealing goods "charged in the indictment;" any ordinary jury would, it seems, understand this without instruction. Besides, no mention is made in the motion for a new trial about instruction 7 aforesaid.

2. It is insisted that the trial court erred in permitting the State to introduce evidence of the burglary of the warehouse and larceny therefrom, while the indictment charged burglary and larceny in the storehouse of the company. There are two answers to this contention, the first, that defendant went acquit of the burglary and therefore it does not concern him what was the proper designation, the "local habitation and name" of the building burglarized.

The second answer rests upon the following definitions selected from the standards of our language, and showing with great distinctness that store, storehouse and warehouse are synonymous and interchangeably used to express the same thought:

Store.—"A place where supplies, as provisions, ammunition, arms, clothing, or goods of any kind, are kept for future use or distribution; a storehouse; a warehouse; a magazine."

"A place where goods are kept for sale by either whole-sale or retail; a shop; as a bookstore; a dry goods store." [Cent. Dict. 5969.]

Storehouse.—"A house in which things are stored; a building for the storing of grain, food-stuffs, or goods of any kind; a magazine; a repository; a warehouse; a store." [Ib.]

Shop.—"A building, or a room or suite of rooms, appropriated to the selling of wares at retail." [Ib. 5585.]

Repository.—"A place where things are or may be deposited for safety or preservation; a depository; a store-house; a magazine." "A place where things are kept for sale; a shop; as, a carriage-repository." [Ib., 5087.]

Warehouse.—"A house in which wares or goods are kept; a storehouse." [Ib. 6823.] "A store for the sale of goods at wholesale; also often, a large retail establishment." [Ib.]

Magazine.—"A receptacle in which anything is stored; a storehouse; a warehouse." [Ib. 3571.] See, also, Anderson's Law Dict. 979.

3. Defendant's demurrer to the evidence will now be considered and in reference to which the following summary of the evidence is deemed sufficient:

Defendant Wesley Sprague, and his son, Jack Sprague, were indicted at the April term, 1898, of the Dent county circuit court, and charged with unlawfully, feloniously and burglariously breaking into and entering the store of the firm of the Dent County Mercantile Company, with intent the goods, wares and merchandise therein to unlawfully, feloniously and burglariously take, steal and carry away.

The facts as disclosed by the testimony show that one, Dr. W. C. Guild, lived with his family in Salem, Dent county, Missouri, a neighbor to Wesley Sprague; that Doctor Guild ran a store and photograph gallery combined, and that it was a two story building situated near the store of the Dent County Mercantile Company. That Wesley Sprague

and his son were engaged in butchering for persons in the town of Salem, Dent county, Missouri. That on the night of the ninth of April, which was Saturday night, or the morning of the tenth of April, which was Sunday morning, about three o'clock Dr. W. C. Guild was awakened by some one rapping at his door; that he arose and went to the door and found Wesley Sprague, who told him that he wanted some matches; that the doctor went out and talked to Sprague, and Sprague said to him that they made a raid last night and have a lot of goods in the back part of your side room; and that the defendant Sprague wanted the Doctor to go down to the store of the Doctor's and that the said Guild did return to his house and dressed himself and went down to his store and gallery with Sprague. That when they got there they found a lot of goods that had been put into the store by breaking out the sash in the back window and unlocking the back door. Dr. Guild testified he put the goods upstairs; that he and Sprague then went back and got their breakfast and then returned and hid the articles about the building occupied by Dr. Guild, with the exception of the coffee. That they took the coffee and wrapped it in papers and stuck it underneath the floor and then they went to the baker shop and got a lot of sacks and wrapped up a half box of crackers and took them home. That defendant and Dr. Guild divided up the coffee. Dr. Guild identified the goods offered in evidence and described in the indictment as being the goods found in his store when Sprague come and got him to go there on the morning of the tenth of April, 1898. The wife of Dr. Guild testified that Sprague did come and wake the Doctor up at the time mentioned, and that the Doctor went away with him, then returned and got his breakfast, then the two went back to town again and returned together about 11 o'clock, Sunday.

The evidence showed that the Dent County Mercantile Company occupied two buildings with their establishment,

and that they were the successors of Dye Brothers & Fraser in the same line of business, and that the stockholders in the corporation were composed of the former partners and others. The record showed that one of the buildings was used as the principal mercantile establishment and the other, which was connected with it by a bridge or walkway about twenty feet in length and by a stairway, was used also to carry certain other lines of goods which were constantly being bought and sold by the corporation. The goods described in the indictment were positively identified by Mr. Fraser; their value was positively sworn to by Mr. Fraser, and he fixed it at from $40 to $60. Mr. Fraser had been a former partner in the firm, and was a stockholder in the Dent County Mercantile Company. The goods that were stolen were taken from the north building, commonly known as the warehouse, in which certain lines of goods handled by the firm were kept. The evidence showed that they were constantly receiving and selling goods from this building as well as the other, and that it was practically a part of the main storehouse.

It seems that the burglary was committed by the use of a key which Wesley Sprague had and which he told Dr. Guild that he, Wesley Sprague, got from his son, Jack Sprague, while Jack Sprague worked for the Dent County Mercantile Company or their predecessor. These keys it seems fitted the door of the north building from which the goods were taken. These keys were exhibited to Dr. Guild sometime previous to the burglary by Wesley Sprague. It seems that suspicion was directed to the defendants, and that a search was made of the premises of Dr. Guild and that the goods described in the indictment were found there. The defendant undertook to prove an alibi by himself, his wife and mother-in-law. Their testimony tended to show that the wife of defendant was ill from the sixteenth of March up to and including the day of the burglary, and that the defend-

ant was at home every night and slept in the room with his wife and also her mother, and that the defendant slept on the floor near his wife's bed, and the mother-in-law slept with his wife in her bed in order to assist her in the care of an infant child.

Under such evidence as above, the demurrer was groundless and the evidence properly held sufficient.

4.   It is urged that the court should have given an instruction on petit larceny, but this suggestion is answered in two ways:   First, by the foregoing resume of the evidence, second by the fact that defendant at the close of the State's instructions did not except because the court did not fully instruct upon all questions of law, etc., as pointed out in State v. Cantlin, 118 Mo. 100, and numerous subsequent cases.

5.   Over the objection and exception of defendant, the court gave five instructions, among them instruction four is the following:   "The court instructs the jury that the testimony of parties who admit that they have aided, assisted and abetted in the commission of the crime for which a party is on trial is admissible as evidence yet such evidence should be received and considered by the jury with great caution and in this case the evidence of W. C. Guild should be received and considered by you with great caution; but if after a cautious and careful consideration of the same you are satisfied of its truth, and if such testimony satisfies you beyond a reasonable doubt of the guilt of defendant, you will be warranted in convicting the defendant on said testimony even without any corroboration thereof."

On this point, defendant asked this instruction on the subject of an accomplice:

"No. 4.   The court instructs the jury that the testimony of an accomplice in crime, that is, a person who actually commits or participates in a crime is admissible, yet

the evidence of an accomplice in a crime, or of a witness who claims by his testimony to be an accomplice in a crime, when not corroborated by some other person or persons not implicated in the crime, as to matters material to the issue; that is, matters connecting the defendant with the commission of the crime charged against him, ought to be received with great caution by the jury, and the jury ought to be fully satisfied of the truth of such evidence before they should convict the defendant on such testimony. In this case, gentlemen, the State seeks to convict the defendant upon the uncorroborated evidence of W. C. Guild, who, by his testimony, declares himself to have been an accomplice in the commission of the offense charged against this defendant in the indictment read to you; and while you may, on the uncorroborated evidence of Guild alone, find this defendant guilty, yet you should receive his evidence with great caution in all matters connecting the defendant with the commission of said crime, and should be fully satisfied of the truth of his testimony before you should convict the defendant upon it alone."

The trouble with instruction 4 given by the court is that it is too limited in its scope and operation, since it leaves the jury without any guide as to what is meant by the word "corroborated." In illustration of this is the case of State v. Donnelly, 130 Mo. 642, where this instruction was before this court: "The court instructs the jury that they are at liberty to convict the defendant on the uncorroborated testimony of an accomplice alone, if they believe the statements as given by such accomplice in his testimony are true in fact and sufficient in proof to establish the guilt of defendant. But the jury are instructed that the testimony of an accomplice in crime, when not corroborated by some person or persons not implicated in the crime, as to matters material to the issue, that is, matters connecting the defendant with the commission of the crime charged against him and identi-

fying him as the perpetrator thereof, ought to be received with great caution by the jury, and they ought to be fully satisfied of its truth before they should convict the defendant on such testimony."

BURGESS, J., in passing upon such instruction and speaking for the court remarked: "There are a number of objections urged against this instruction, but they seem to be without merit. It is in the usual form, and has often met with the approval of this court. [State v. Dawson, 124 Mo. 422; State v. Chyo Chiagk, 92 Mo. 395; State v. Crab, 121 Mo. 554; State v. Jackson, 106 Mo. 179; State v. Harkins, 100 Mo. 666; State v. Woolard, 111 Mo. 248.]" See, also, 3 Rice's Evid., pp. 507, 509, and cases cited; State v. Miller, 100 Mo. 606.

There was error therefore in refusing to give the instruction asked by defendant, except that portion which assumed that the testimony of Guild was non-corroborated, and error also, in giving instruction 4 which the court gave of its own motion.

6.  Relative to the conduct of the jury after their retirement, this affidavit was filed by W. P. Elmer: "That after said jury had retired to consider of their verdict, they argued facts not introduced in evidence in the case, but which a juror gave to the jury as purporting to come of his own knowledge, and that said juror said that a responsible man had told him that Smith had told such man that Wesley Sprague had keys to some of the buildings in the city of Salem, Missouri, and that he had good reason to believe that Wesley Sprague had entered his store by means of such keys. Wm. P. Elmer says upon his oath that the facts stated in the above affidavit are true according to his best knowledge and belief.

"Sworn and subscribed to before me this 10th day of June, 1898.

"L. Judson, Notary Public."

The court did right in not letting such a diluted and remote hearsay affidavit prevail against the jury; it would have stultified itself had it done so. The affidavit is to the last degree indefinite and unsatisfactory. *What* juror was it that was trying to impeach his own verdict and cast a stain on his fellow-jurymen? He would not be allowed to impeach his verdict even by his own affidavit, much less by statements he is alleged to have made to an outsider. Furthermore, even if such affidavit were receivable in any case, it must be based on something more than "information and belief." [Thompson & Merriam on Juries, sec. 437.]

As to the juror, who after the jury had agreed upon a verdict and had so informed the sheriff, and the latter had started to inform the court of the fact, and had gone about one hundred yards, he was informed that Bennett the juror had left the jury room and had gone to the water closet. On receiving this information the sheriff at once returned, took the juror back to the jury room, and the jury immediately returned their verdict, and it was not more than five minutes that the juryman was absent from the jury room. In such circumstances the trial court rightfully refused to set aside the verdict.

By reason of the error aforesaid, the judgment should be reversed and the cause remanded. All concur.

Reversed and remanded.