**STATE of Missouri, Respondent,**

v.

**Calvin Tyrone BURKS, Appellant.**

**No. 56909.**

Supreme Court of Missouri,
Division No. 1.

July 17, 1972.

Motion for Rehearing or to Transfer to Court
En Banc Denied Sept. 11, 1972.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

Roger Edgar, Charles A. Weiss, St. Louis, for appellant; Bryan, Cave, McPheeters & McRoberts, St. Louis, of counsel.

RICHARD C. JENSEN, Special Judge.

Defendant Calvin Burks was found guilty by a jury of murder in the first degree and his punishment assessed at life imprisonment. In his appeal from the judgment he urges and relies on two points:

First, the court erred in refusing to give defendant's requested Instruction A, which is as follows: "An accomplice is one who,

with knowledge of his illegal conduct, participates in a crime or aids and abets its commission. If you find and believe from the evidence that the witness Ronald Gunn is an accomplice, then the court instructs the jury that such witness' testimony should be received by them with care and weighed with great caution."

Second, defendant urges the court erred in admitting into evidence the spent bullet taken from the body of deceased.

In order to consider defendant's first point, it will be necessary to set out the evidentiary facts in some detail.

The victim, Lynda Walker, was employed as a nurse by Firmin Desloge Hospital in the City of St. Louis. At about four o'clock p. m. on February 6, 1970, she left work, leaving the hospital by the north door on Rutger Street. Mrs. Walker was next found lying face down in the middle of the intersection of Rutger and Motard Streets. She had, along with cuts and scrapes, a small puncture wound in the back of her neck. She was pronounced dead upon arrival at City Hospital. An autopsy was performed by the coroner who testified that the cause of death was a gunshot wound of the spinal cord, laceration of the right jugular vein, and aspiration of blood into the lungs. A .22 caliber spent bullet was removed from the body of deceased. Witness Gunn read about the murder in the newspaper and subsequently called the police, telling them who was involved and identified himself. Gunn was also under indictment, charged with decedent's murder at the time of this trial. Gunn, testifying on behalf of the state, stated that he was eighteen years of age and on February 6, 1970, he was sitting on the passenger side of an automobile with Melvin Vincent in front of a restaurant. Defendant Burks, in the company of Jerome Pruitt, approached the automobile and asked Vincent to take him to Firmin Desloge Hospital to pick up a check. The four young men who had known each other for a number of years then proceeded in Vincent's automobile to the hospital area with Vincent driving. The car was stopped approximately one half block west of the hospital when Pruitt and Burks alighted from the automobile. At that time Gunn noticed that Pruitt had a .22 caliber revolver stuck in the waistband of his trousers. He had seen Pruitt carrying this revolver before this time. Vincent and Gunn proceeded in the car in a westerly direction on Vista Street to Spring Street, turning north on Spring where they were stopped by a truck. They then proceeded north and turned east on Rutger, at which time Gunn observed a 1971 Cutlass automobile coming off of Motard turning from south to west on Rutger. As the automobile made the turn, he saw a body come out of the passenger side and land in the intersection. Defendant Burks was driving this automobile and Jerome Pruitt was in the back seat as it proceeded west passing the Vincent vehicle. Vincent and Gunn continued traveling east and stopped at the intersection, at which time Vincent asked a uniformed officer from the hospital "what had gone on there". Vincent and Gunn then went downtown to a clothing store. Later that same evening Gunn saw defendant, at which time the defendant stated to Gunn that Pruitt had shot the victim. Gunn and defendant chanced to meet on the street the following morning, at which time defendant repeated his statements of the prior evening and asked Gunn what he should do, also stating that as he and Pruitt were walking through the parking lot of the hospital, and after leaving the Vincent automobile, Pruitt suggested they should snatch a purse. Defendant further told him that they forced the victim to get into her car, Pruitt getting into the rear seat and defendant getting behind the wheel. Pruitt took the victim's rings and defendant took the victim's purse, after which Pruitt shot the victim and pushed her out of the automobile. Gunn further testified that he saw the victim's car parked on the street the same evening of the murder and, along with three differ-

ent men, attempted to steal the tires from it, but they were not successful and fled when a police car approached. Gunn had entered the car to look for a screwdriver. Fingerprints of witness Gunn were found on the rearview mirror and fingerprints of the defendant were found on the left front door glass on the driver's side of the victim's car. Luggage tags bearing the maiden name of the victim and automobile keys of the victim's car were later found at the home of Jerome Pruitt. The state's evidence also showed that this defendant was a former employee of Firmin Desloge Hospital.

In arguing his first point, defendant urges that witness Gunn was an accomplice and, therefore, defendant's Instruction A should have been given, citing: State v. Woolard, 111 Mo. 248, 20 S.W. 27; State v. Meysenburg, 171 Mo. 1, 71 S.W. 229; State v. Sprague, 149 Mo. 409, 50 S.W. 901; State v. Donnelly, 130 Mo. 642, 32 S.W. 1124; and State v. Williams, Mo.App., 266 S.W. 484.

The state takes the position that witness Gunn was not an accomplice and further, that even if there had been evidence of his complicity, no such instruction was necessary since his testimony was corroborated by other evidence.

It has been the settled law of Missouri since before the turn of the century that the juries are at liberty to convict on the uncorroborated testimony of an accomplice, and it is equally well settled that such evidence ought to be received with great caution by the jury and they ought to be fully satisfied of its truth before they convict upon such evidence alone and the trial court must instruct the jury accordingly, State v. Donnelly, supra, and other cases set out above. Neither party here takes any issue with the law in this regard.

■ In ruling this question, it must be determined just what is an accomplice at law. In 21 Am.Jur.2d 118, p. 196, an accomplice is described: "An accomplice is said to be one who knowingly, voluntarily, and with a common interest with others participates in the commission of a crime either as a principal or as an accessory before the fact." Also, Vol. 1A Words and Phrases, p. 186: "An 'accomplice' is one who knowingly, voluntarily, and with common intent with the principal offender unites in the commission of a crime."

These clear definitions have been adopted and are solidly woven into the law of this state by decisions whenever the accomplice issue has been raised.

■ However, a careful examination of the evidence fails to reveal any fact from which it is a fair inference that Gunn participated or united in the commission of this crime, State v. Martin, Mo.Sup., 428 S.W.2d 489.

Gunn's testimony puts him in the Vincent automobile as a passenger showing no other knowledge as to any purpose other than to ride to Firmin Desloge Hospital for Pruitt to pick up a check, and does not involve him with Pruitt and defendant in any manner with the perpetration of the crime itself after Pruitt and Burks left the automobile.

Defendant in his own testimony does not put Gunn any closer to the crime and does not implicate Gunn in any manner as a participant, aider and abetter, or with any knowledge as to the robbery and murder until after the crimes had been committed.

■ The mere indictment of Gunn for this same crime does not make him an accomplice, State v. Umble, 115 Mo. 452, 22 S.W. 378. Nor does the statement of the prosecuting attorney to the court before the commencement of the trial, "Ronald Gunn, for the record, is an accomplice who has agreed to testify for the state", make him an accomplice when the evidence in the case does not bring him into this legal

posture. Therefore, Ronald Gunn was not an accomplice in this murder and the trial judge was correct in not viewing him as such.

We hold that the trial court ruled properly in refusing to give defendant's Instruction A.

In view of our finding that witness Gunn was not an accomplice under the evidence, it would serve no useful purpose to rule here on the question of the sufficiency, or lack thereof, of the state's evidence concerning the question of corroborative evidence.

Defendant, in urging his second point, cites three Missouri cases: State v. Long, 336 Mo. 630, 80 S.W.2d 154; State v. Creed, 299 Mo. 307, 252 S.W. 678; and State v. Porter, 276 Mo. 387, 207 S.W. 774. Each of these three cited cases involves the admission into evidence of the clothing of a deceased and it is difficult to relate those circumstances in the same light as a spent bullet in a pellet box that is exhibited to a jury. The evidence fails to disclose anything unusual about the spent bullet as to color, shape, or markings which could under the circumstances in this case be considered gruesome, inflammatory, or prejudicial, and no attempt was made by the state to offer into evidence the blood stained garments of the deceased here.

In Long, supra, which cites Porter and Creed, supra, it was held that "if such evidence would tend to establish any fact at issue or would tend to throw light on the controversy and aid the jury in any way in arriving at a correct verdict, the evidence should be admitted, be it ever so gruesome." 80 S.W.2d 1. c. 160. Defendant relies on an exception to this rule which is that counsel for defendant by admitting the corpus delicti of the crime in stipulating as to the identity of the deceased, the date of death, and the nature and character of the fatal wound obviated the necessity on the part of the state to present this evidence to the jury.

Out of the hearing of the jury defendant's counsel made the following admissions: "We admit that the deceased was Lynda Walker; that on February 6, 1970, she was shot to death; that she died as a result of a gunshot wound of the spinal cord and aspiration of blood, and the wound was in the left side of the neck near the fourth vertebra," to which counsel for the state replied:

"MR. FREDERICKS (Prosecuting Attorney): I appreciate the admission, however, I am not bound by it nor do I want to stipulate. But I can state to the Court right now there will be no clothes of the deceased offered for the reason it will not tend to prove or disprove any issues in this case.

MR. EDGAR (Defendant's Attorney): All right, fine."

Later, upon the state's offer into evidence of the spent bullet, to which the defendant objected, the record shows the following:

"MR. FREDERICKS:

. . . I have a proposition for counsel though. We can shorten this thing very quickly. Will he agree and stipulate between all the parties that this is the pellet removed from the body and that it was a .22 long caliber slug? And we can stipulate right now.

    *     *     *     *     *     *

MR. EDGAR: I don't see what difference it makes.

MR. FREDERICKS: If you don't want to agree then we will prove it up.

MR. EDGAR: All right, you go ahead and prove it up. I have made my objection.

    *     *     *     *     *     *

MR. FREDERICKS: Do you want to stipulate this is a .22 caliber pellet?

MR. EDGAR: No. I have said what I won't."

The refusal of defendant's counsel upon the offer of the prosecuting attorney to

**306**

admit that the murder bullet was a .22 caliber, and that it was removed from the body of the victim, made it necessary for the state to offer the spent bullet into evidence to establish its caliber in the presentation of its case.

■ This evidence is a connecting link and ties in with the testimony of witness Gunn that he had noticed a .22 caliber pistol in the waistband of Pruitt's trousers when he got out of the car with defendant shortly before the murder was committed.

■ Furthermore, the state must prove its case beyond a reasonable doubt and should not be unduly limited in the quantum of its proof, State v. Evans, Mo.Sup., 406 S.W.2d 612 and cases cited, 1. c. 617.

Under the circumstances the admission into evidence of the spent bullet did throw light upon a material matter at issue, and the trial court properly admitted it into evidence.

The judgment is affirmed.

BARDGETT, Acting P. J., and SEILER, J., concur.

HOLMAN, P. J., not sitting.