The State v. Umble.

THE STATE v. UMBLE, *Appellant.*

Division Two, May 2, 1893.

1. **Criminal Practice**: EVIDENCE: DYING DECLARATIONS. Dying declarations made three days before her death and after the deceased had been informed by her physicians that her entrails were cut and after her repeated expressions of opinion that she could not recover, were properly admissible in evidence on the trial of defendant for her murder.

2. ———: ———: ACCOMPLICE. An accomplice who is separately indicted is not incompetent to testify as a witness on the trial of the principal defendant.

3. ———: ———: ACCESSORY AFTER THE FACT. An accessory after the fact, although indicted as such, is not an accomplice and it is not error, on the trial of the principal defendant to refuse to instruct the jury that they should use great caution in weighing the evidence of such accessory and that such evidence was insufficient to convict, unless corroborated by other witnesses.

4. ———: MURDER IN SECOND DEGREE: INSTRUCTION. An instruction on murder in the second degree is not required by Revised Statutes, 1889, sec. 3461, except where the evidence would justify the jury in finding the defendant guilty of such offense. (*State v. Hopper*, 71 Mo. 425.)

5. ———: MURDER IN THE FIRST DEGREE. The evidence in this case reviewed and *held* to support a conviction of murder in the first degree.

*Appeal from Jackson Circuit Court.*—HON. H. P. WHITE, Judge.

AFFIRMED.

*R. H. Maybury* and *H. Q. Bridges*, for appellant.

(1) The court erred in not instructing the jury upon murder of the second degree. "From the simple act of an (intentional) killing, the law presumes murder of the second degree. If the homicide was

intentional, but not premeditated and deliberate, nor within any of the grades of manslaughter, or justifiable or excusable, it was murder of the second degree." *State v. Hudson*, 59 Mo. 137; *State v. Mathews*, 20 Mo. 50; *State v. Branstetter*, 65 Mo. 155; *State v. Gassert*, 65 Mo. 354; *State v. McKinzie*, 102 Mo. 628. (2) The court erred in not instructing the jury upon manslaughter of the fourth degree. If defendant acted without malice and in a heat of passion and not in self defense she was guilty of manslaughter of the fourth degree, even though she willfully killed the deceased. Revised Statutes, 1889, sec. 3477; *State v. Edwards*, 70 Mo. 480; *State v. Curtis*, 70 Mo. 600; *State v. Watson*, 95 Mo. 411; *State v. McKinzie*, 102 Mo. 632. (3) It was the duty of the court to have instructed the jury upon murder of the second degree and manslaughter of the fourth degree, whether requested to do so or not. *State v. Branstetter*, 65 Mo. 155; *State v. Palmer*, 88 Mo. 568; *State v. Ware*, 62 Mo. 597; *State v. Mathews*, 20 Mo. 50; *State v. Dunn*, 80 Mo. 689; *State v. Johnson*, 76 Mo. 122. (4) The court erred in not instructing the jury upon murder of second degree and manslaughter of fourth degree, because the homicide was committed while resisting an assault. "If the killing was intentionally done while resisting an assault by the deceased, if not justifiable or excusable, it was murder of the second degree or manslaughter of fourth degree." *State v. Starr*, 38 Mo. 277, and authorities *supra* under points 1, 2, 3. (5) In determining what instructions are to be given, the testimony of the defendant must be considered the same as that of any other witness, though her testimony be at variance with that of every other witness in the case. *State v. Banks*, 73 Mo. 596. (6) The court erred in permitting the witness, William Jackson, to testify over the defendant's objection, because said witness was then under indict-

ment as an accessory after the fact to the same crime charged against the defendant, and was in law an accomplice. "The term accomplice includes  *  *  * all *particeps criminis*, whether principals in first or second degree, or merely as accessories before or after the fact." Bouvier's Law Dictionary, 83, Title Accomplice. (7) The court erred in refusing defendant's instruction on the weight to be given to and the corroboration necessary to the testimony of the witness William Jackson, as an accomplice to the killing. *State v. Walker*, 98 Mo. 96; *State v. Chiagk*, 92 Mo. 395, 407. (8) The court erred in permitting witnesses Anna Carow and Fannie Jackson to testify as to the alleged dying declarations of deceased, Effie Jackson, and in permitting such alleged declarations to go to the jury as the dying declarations of deceased; because it did not sufficiently appear that deceased had then given up all hope and was under a well-founded apprehension of impending or immediate dissolution. *State v. Simon*, 50 Mo. 370; *State v. Vansant*, 80 Mo. 67; *State v. Wensell*, 98 Mo. 137; *State v. Chambers*, 87 Mo. 408.

*R. F. Walker*, Attorney General, and *M. K. Brown*, Prosecuting Attorney, for the state.

(1) Where the evidence all tends to prove one offense, it is error to mislead the jury by giving instructions in reference to a different one. *State v. Starr*, 38 Mo. 272; *State v. Johnson*, 76 Mo. 122; *State v. Wilson*, 88 Mo. 13; *State v. Turlington*, 102 Mo. 662. (2) The evidence for the state showed express malice, and proved murder in the first degree. *State v. Jones*, 79 Mo. 442; *State v. Wilson*, 88 Mo. 13; *State v. Bulling*, 105 Mo. 220. (3) The instruction of the trial court; that there was no evidence of provocation or passion, necessary to eliminate the element of deliberation, was

right. *State v. Ellis*, 74 Mo. 219; *State v. O'Hara*, 92 Mo. 64; *State v. Edwards*, 70 Mo. 483; *State v. Johnson*, 76 Mo. 127; *State v. Sneed*, 91 Mo. 559; *State v. Blunt*, 91 Mo. 503. (4) Defendant's contention that instructions should have been given on murder in the second degree is necessarily wrong. "Murder in the second degree is such a homicide as would have been murder in the first degree if committed deliberately." *State v. Wieners*, 66 Mo. 20. The distinction between that provocation which, if homicide be committed under a passion, resulting therefrom, makes the homicide murder in the second degree, and that which makes it manslaughter, renders it impossible for this to be murder in the second degree. *State v. Starr*, 38 Mo. 272; *State v. Curtis*, 70 Mo. 599; *State v. Ellis*, 74 Mo. 219; *State v. Thomas*, 78 Mo. 338; *State v. Bulling*, 105 Mo. 221. (5) No evidence in this case tended to make the crime manslaughter in the fourth degree. There was no involuntary killing to bring the homicide within the purview of section 3476, Revised Statutes, 1889. A deadly weapon was intentionally used upon a vital part of the deceased. *State v. McKinzie*, 102 Mo. 621. Defendant says she cut deceased because she was afraid, making her plea similar to one of which this court has said that in his testimony he (the defendant) "does not give the faintest hint that when he fired the fatal shot he was actuated by any other impulse or motive than that of defending himself from the impending danger of an unprovoked and dangerous assault, then being made upon him by the deceased with a drawn axe." *State v. Rider*, 95 Mo. 483. The plea of the defendant was self-defense; otherwise, her testimony that deceased had previously threatened her was incompetent. *State v. Clum*, 90 Mo. 482. This case differs from the general run of cases where self-defense is pleaded, in that defendant does not state that deceased

either drew or made a motion as if to draw any dangerous weapon. This does not alter the nature of the defense, nor create any necessity to instruct as to other grades of crime. *State v. Elliott*, 90 Mo. 356. This case is not one of a defendant in a heat of passion, resisting an assault by means or to an extent beyond that justified by the law of self-defense, and so becoming an offender. Nor does the defendant's testimony tend to make such a cause, because: *First*, there was no heat of passion; *second*, the assault claimed by the defendant to have been made on her by deceased was no common assault and battery; it was preceded by a threat. When at the time of the killing deceased sought the difficulty or did any act or said anything which indicated a purpose on her part to execute the threat, such threat becomes a material matter. *State v. Harris*, 73 Mo. 288; *State v. Tabor*, 95 Mo. 594. "If the deceased was killed under the circumstances detailed by the witnesses for the state, the crime of murder in the first degree was fully made out, and there is nothing in the evidence which required the court to give instructions upon any other grade of homicide. If, on the other hand, the deceased was killed under the circumstances detailed by defendant, the law justified him in the killing." *State v. Sneed*, 91 Mo. 559; *State v. Rider*, 95 Mo. 483. The defendant had had a quarrel with deceased; there was a grudge between them; on the day of the killing defendant armed herself with a knife; she had previously told deceased that she (deceased) "wouldn't do anything to me unless I would do something to her;" there was preconceived malice. In such case, if the killing be done in malice, the provocation immediately preceding it will be of no avail to excuse or mitigate the offense. 3 Greenleaf on Evidence, sec. 147; *State v. Green*, 37 Mo. 466. (6)

Instruction number 5 for the defendant told the jury
that self-defense would avail the defendant, "although
it might afterward turn out appearance was false, and
there was in fact neither design on the part of the
deceased to commit a felony upon defendant, or to do
her some great personal injury, nor reasonable cause
to apprehend immediate danger of such design being
accomplished." This entitled defendant to an acquit-
tal, if the jury believed her; failure to instruct on lower
grades of crime did not prejudice her. *State v. Turl-
ington*, 102 Mo. 663. In *State v. Watson*, 95 Mo. 413,
the defendant seems to have made no claim of former
threats by deceased; the assault made on defendant
was not accompanied by any threats, and was in a
lighted room, and was clearly only an aggravated
battery; there was evidence there that defendant
resisted the assault by means out of proportion to it;
here, according to the defendant's statement, the
deceased made an assault upon her, from which she
might and would reasonably apprehend great bodily
harm. (7) The dying declarations of the deceased
were properly admitted. *State v. Wensell*, 98 Mo. 146;
*State v. Johnson*, 76 Mo. 124; *State v. Burns*, 33 Mo.
490. (8) William Jackson, who was separately
indicted as an accessory after the fact, was a competent
witness. 1 Bishop on Criminal Procedure [3 Ed.] sec.
1167; *State v. Walker*, 98 Mo. 102. (9) The caution-
ary instruction as to the testimony of an accomplice
was rightly refused; conceding that the term "accomp-
lice" includes an accessory after the fact, there was no
testimony that William Jackson was an accomplice;
the existence of an indictment charging him with that
crime, and its introduction in evidence, did not even
*prima facie* make him guilty, so as to justify the cau-
tionary instruction. *State v. Hart*, 66 Mo. 216.

GANTT, P. J.—The defendant is a negro woman and was indicted by the grand jury of Jackson county for the murder of another negro woman, Effie Jackson, on the fifteenth of May, 1891. She was assigned counsel by the criminal court, and they have shown a most commendable appreciation of the obligation resting upon the members of our profession, under such circumstances, by defending her case with painstaking care and with much ability.

After several continuances the cause was finally tried at the April term, 1892, and she was convicted of murder in the first degree.

This state of facts is shown by the record. The defendant, Amanda Umble, and the deceased Effie Jackson, were both enamored with one William Jackson, a young negro man, a porter in a saloon in Kansas City. All parties lived in Kansas City. It appears that the defendant had learned that William was devoting much of his time to Effie, and she had met Effie on one occasion just prior to the killing, and hard words and threats had been made and passed by both.

On the night of the fifteenth of May, William and Effie had been to a negro dance, and on their return, stopped and drank a glass of beer in two different saloons. They then started together to Effie's home, and when they had reached a point on Fifth and Holmes streets, they met the defendant, Amanda. She at once accosted William and demanded to know of him where he had been and said she had been looking for him.

William testifies that Effie said to Amanda, "Is you and Will married?" to which defendant replied, "That's none of your business." He says that Effie then approached nearer where he and Amanda were standing, whereupon Amanda struck Effie and Effie

ran across the street and into an alley. He testifies further that he held Manda until he thought Effie was entirely out of danger, when he turned her loose. She pursued Effie, and he saw her as she disappeared in the alley, in pursuit. He started to the saloon in which he was working, but in a moment he heard the cries and screams of Effie. He heard her scream, "*Will, she is cutting me.*" He ran into the alley and found the defendant on top of Effie, with knife in hand. His story as to the scene in the alley is corroborated by a white lady, Mrs. Kintz, who lived on a lot adjoining the alley in which the stabbing was done. She testified she heard a terrible scream in the night and thought possibly her dog had hurt some one, and went out into her yard, when she heard a second scream and then some one said, "I have got you now for going with my fellow." She did not know the women, but she heard the groans and saw the patrol wagon come and Dr. Iuen get off.

The evidence of the woman with whom defendant boarded showed that defendant left her house after nine o'clock, saying she wanted to see William Jackson. He says she told him she was looking for him, and expected to find him with one of his women.

The dying declarations of Effie Jackson also were admitted and she said that defendant stabbed her in the alley.

The police officer and the physicians testified that deceased was stabbed in five or six different places. The wound which killed her was a deep cut in the lower left portion of the abdomen. It cut through the abdominal wall into the intestines. This was about two inches long on the surface. This wound produced peritonitis and blood poisoning, from which the woman died during the succeeding week.

The testimony shows defendant started out to hunt William Jackson that night with this knife concealed in the bosom of her dress. After the killing the defendant fled and for several days eluded the officers. She testified on her own behalf and admitted the killing, but claimed she did it in self-defense. The evidence is uncontradicted that Effie Jackson had no arms upon her person that night nor did she use any upon defendant.

The trial court instructed the jury on murder in the first degree and self-defense. Its instructions in this respect are unexceptionable. The court also gave instructions on the credibility of the witnesses and reasonable doubt, to which there can be no reasonable objection. No point is made on any of them by the learned counsel for defendant, nor can we see any error in them.

The errors assigned and relied upon are briefly:

*First.* That the trial court erred in not instructing the jury on murder in the second degree and manslaughter in the fourth degree.

*Second.* That William Jackson having been indicted in a separate indictment as an accessory after the fact, was an incompetent witness.

*Third.* That the court erred in not giving an instruction, number 7, prayed by defendant, upon the assumption that William Jackson was an accomplice and that his testimony should be weighed with great caution and was not of itself sufficient to convict.

*Fourth.* That the dying declarations of deceased were improperly admitted in evidence.

I. The dying declarations were made after the deceased had been informed by her physician that her entrails were cut. She again and again expressed her opinion that she could never recover. These declarations were made after she had been taken to the hospi-

tal, and only three days before her death.  They were most carefully limited to the fatal blow and who inflicted it, and were clearly competent.  *State v. Johnson,* 76 Mo. 124; *State v. Kilgore,* 70 Mo. 546; *State v. Burns,* 33 Mo. 490.

II.  The defendant offered and read in evidence an indictment preferred by the grand jury of Jackson county, which charged William Jackson, *separately,* with being an accessory after the fact, to the murder of Effie Jackson by defendant.  Defendant now claims that by reason of said indictment and charge, William Jackson was rendered incompetent to testify in the case.  Granting that William Jackson was an accomplice, inasmuch as he was not jointly indicted with defendant, he was not rendered incompetent to testify by the separate indictment.  *State v. Walker,* 98 Mo. 95; 1 Bishop's Criminal Proceedure [3 Ed.] sec. 1167; Wharton's Criminal Evidence, sec. 439; *McKenzie v. State,* 24 Ark. 636.

III.  Did the court err in refusing to instruct the jury in behalf of defendant, "that William Jackson by reason of the indictment against him as an accessory after the fact, became in the eye of the law, an accomplice in the alleged crime, and that the jury therefore should use great caution in weighing his evidence, and that such evidence was not sufficient to convict unless corroborated by other witnesses?"

"An accomplice is a person who knowingly, voluntarily and with common intent with the principal offender, unites in the commission of a crime."  Wharton's Criminal Evidence, sec. 440.  One who bears this relation to a crime is a principal in the first degree, and is liable to be charged and punished in the same manner as a principal.  Revised Statutes, 1889, section 3944.  But it is very clear that an accessory *after the fact* within the meaning of section 3945, Revised Stat-

utes, 1889, is not an accomplice within the definition of Dr. Wharton. Certain it is he cannot be charged or punished as the principal offender. His offense is distinctly his own, and he is liable to a different punishment. Nor can he be indicted jointly with the principal for the principal's offense. *Com. v. Wood,* 11 Gray, 86.

As a legal proposition then, we hold the indictment did not render him an accomplice, and moreover there is not in this record any evidence that would convict him of such an offense. Had the court so instructed, it would have erred. Unless we are to hold that a naked charge is sufficient evidence of his guilt, such an instruction would have had no facts upon which it could have been based, and would have constituted manifest error.

IV. We have carefully considered the contention of counsel that the trial court should have instructed the jury on murder in the second degree and manslaughter in the fourth degree.

The distinction between murder in the first and second degree has been so clearly and so often made by this court, beginning with *State v. Wieners,* 66 Mo. 13, and so recently reiterated and reviewed by this division in *State v. Bulling,* 105 Mo. 204, it is deemed unnecessary to enter again upon the discussion of the reasons for the distinction.

The statutory mandate that "upon the trial of an indictment for murder in the first degree, the jury must inquire, and by their verdict ascertain, under the instructions of the court, whether the defendant be guilty of murder in the first or second degree" (Revised Statutes, 1889, section 3461), was properly construed to require instructions for murder in the second degree *only* in those cases in which the evidence would justify the jury in finding the defendant guilty of

murder in the second degree. *State v. Hopper*, 71 Mo. 425. But in this state the trial court by virtue of section 4208, Revised Statutes, 1889, "is required to instruct the jury in writing upon all questions of law arising in the case" and this court has construed this mandate to be imperative, whether the instructions are requested or not.

Accordingly, it is rare that an appeal from a conviction for homicide does not require a minute examination of the record, to determine whether the *nisi prius* court has instructed upon every grade of homicide of which defendant could possibly be guilty under the evidence.

If the jury believed the evidence of the witnesses for the state in this case, they very properly found the defendant guilty of murder in the first degree. The defendant was shown to have armed herself with a knife which proved to be a most deadly weapon; she started on her search for William Jackson, expecting to find him with another woman, nor is there room for doubt that she anticipated that Effie Jackson would be the woman. She had, only a day or two prior to this, warned Effie against supplanting her with defendant.

When she found them, they were together, and this seems to have strengthened her hate of her rival. She upbraided William and demanded to know where he had been. At this Effie inquired if she and William were married. Defendant at once began an assault upon Effie, who fled to avoid her. The circumstances indicate that she meant no ordinary assault. William caught her and held her until Effie had crossed the street and passed into an alley and had been gone long enough, he thought, to be entirely out of danger. But so embittered was defendant with jealousy, that she was not content to remain and enjoy the society of

her dusky lover. The feeling of hatred toward Effie was stronger than her illicit affection for William, and as soon as he released her, she started in pursuit of her rival.

She had had ample time for her passion to cool; she could not have reasonably anticipated any impending danger from the unarmed and fast fleeing Effie. She deliberately took up the trail and soon the screams of her helpless and unarmed victim rang out from the alley. She was heard to say to Effie, as she was inflicting the deadly stabs, that she "*had her now for robbing her of her fellow.*"

When William Jackson reached the scene, attracted by the screams and groans of Effie that defendant was cutting her, he found defendant on top of Effie, plying her knife. The subsequent examination disclosed some six or eight wounds made by this knife. She had overtaken her rival, and, in a most cruel and relentless manner, stabbed her again and again, heedless of her screams and groans.

When we consider that her victim was unarmed and powerless in her hands, her conduct can only be denominated as atrocious. To characterize such a killing as less than murder in the first degree would be a travesty upon the law and justice. There was no excuse or provocation which the law will recognize in the facts of this case, to reduce it either to murder in the second degree or manslaughter. The defendant's own evidence does not make out a case for either. It was a deliberate murder, actuated by hate, and executed regardless of all the instincts of humanity.

In such cases, this court has repeatedly held it would not invite juries to exercise the pardoning power. *State v. Wilson*, 88 Mo. 13; *State v. Jones*, 79 Mo. 441; *State v. Rider*, 95 Mo. 474; *State v. Dunn*, 80 Mo. 681; *State v. Sneed*, 91 Mo. 559; *State v. Wieners*, 66 Mo.

13; *State v. Bulling*, 105 Mo. 204; *State v. Bryant*, 102 Mo. 24.

The case was well tried and ably defended. The evidence justified the verdict, and the law must be permitted to take its course. The judgment is affirmed. Judges Burgess and Sherwood concur.