# CASES ARGUED AND DETERMINED

IN THE

# SUPREME COURT.

OF THE

# State of South Dakota

---

## STATE v. PHILLIPS.

1. Where the first connection of witness with a stolen horse was after the larceny, when, at the request of defendant, he took the horse from defendant's corral to a place some distance therefrom, where he traded it for other property, witness was not an accomplice, within Rev. Cr. Code § 364, providing that a conviction cannot be had on the uncorroborated testimony of an accomplice; and, in order to sustain defendant's conviction, corroboration of witness was therefore unnecessary.

2. Rev. Cr. Code, § 364, providing that a conviction cannot be had on the uncorroborated testimony of an accomplice does not apply to accessories after the fact.

3. The granting or refusing of a continuance rests in the sound discretion of the trial court, and its ruling will not be reversed except for cogent reasons.

4. That testimony of absent witnesses in support of a motion for continuance in a criminal case is cumulative is not sufficient ground for denying the continuance, where the evidence is material, and due diligence has been exercised in procuring it, and there is a reasonable probability

18 S. D.—1

that the witnesses would be present or their evidence obtained on a trial at a subsequent term.

5. One held to answer in the circuit court for the commission of a crime cannot rely on the promises of witnesses to appear at the trial and testify, in order to be in a position to ask for a continuance on account of of their absence, but must see that they are subpœnaed, or their evidence taken, when it can properly be done, at the earliest possible date.

     FULLER, J., dissenting.

(Opinion filed Feb. 3, 1904.)

Error to circuit court, Lyman county; Hon. FRANK B. SMITH, Judge.

W. F. Phillips was convicted of grand larceny and appeals. Affirmed.

*B. C. Huddle, 1. N. Auld*, and *Horner & Stewart*, for plaintiff in error.

*Philo Hall*, Atty. Gen., for the State.

CORSON, P. J. Upon an information filed by the state's attorney, the plaintiff in error was tried and convicted in the circuit court of Lyman county of the crime of grand larceny. The subject of the larceny was a young horse, between two and three years of age, valued at $30. The plaintiff in error, whom we shall hereafter denominate "defendant," claims a reversal of the judgment of the trial court upon two grounds: (1) Insufficiency of the evidence to justify the verdict of the jury; and (2) error of the court in denying a continuance.

The principal witness on the part of the state to prove the defendant's connection with the larceny charged was one Fred Seymoure. The testimony of Seymoure is quite fully stated by the defendant's counsel, and, as it is conceded to be correct by counsel for the state, we will adopt the statement, which is as follows: "Fred Seymoure, a witness for the state, testified

upon the trial that he had formerly lived in Douglas county, and had come to Lyman county two years ago last fall; that he was twenty-four years old; that he had gone to work for the defendant, Mr. Phillips, on the 17th day of September, 1902; that he was to help run the defendant's cattle, and was to work at the defendant's hay camp on the reservation, about eighty miles from Oacoma; that on a couple of different occasions the defendant had something to say about taking horses off the range; that the defendant had told him that he would like to have him take a claim for him, and said that a fellow could get a horse off the range once in a while that would pay expenses; that he was at Phillips' ranch a short time before election in November, 1902, and that he and the defendant were eating breakfast at the ranch when Clyde Lewis and Albert Lee, two men working for the defendant at that place, brought some horses into the corral at the defendant's ranch, among them being the horse in controversy and another horse, a stallion; that the defendant told him to take these two horses down to the hay camp on the reservation, and that he did so; that he tied the two horses together and took them to the hay camp; that, at the time he took this horse in controversy to the hay camp, he knew it did not belong to the defendant, Phillips; that Phillips came out to the hay camp just before election day; that the defendant asked him to take this horse in controversy down into Douglas county with him, to sell; that he took this horse in controversy along with him, although he knew it was not Phillips' horse, and traded it off at a place about six miles northeast of Geddes; that the defendant wanted $25 for the horse, and that he (the witness) offered to give the defendant $25, or a two year old heifer worth $25,

for the horse in controversy; that the defendant accepted this proposition, and, at the time he (the witness) started, the defendant had sold and transferred the horse to him; that he never paid the defendant anything for the horse; that he had never asked any wages from the defendant, and that he expected to get his money out of this horse; that the defendant had talked to him about taking horses off the range and disposing of them, and told him, if he (the witness) would get them, that he (the defendant) had a way of getting rid of them; that when the horse was taken by him from the ranch down to the camp on the reservation, it was turned loose with other horses out on the range; that when he returned from Douglas county the defendant told him that one Valentine had said he knew where the horses were, and that he (the witness) had stolen them; that the defendant said the best thing for the witness to do was to stand pat and make them prove it, and said, if the witness squealed on him, he (the witness) would never squeal on another man.

The ownership, value and identity of the horse stolen was proven by other witnesses. The only evidence tending to connect the defendant with the larceny, in addition to the testimony of Seymoure, was that of one Bert Carpenter, which is, in substance, as follows: "Bert Carpenter, witness for the state, testified that he was at the hay camp of the defendant, W. F. Phillips, at one time during the last year before the trial; that he saw a horse out there that had a reverse C on the left shoulder, and that he did not notice at the time whether there was a circle bar on him or not; that on the day of the trial, in the livery barn in town, he had seen another brand on the horse than the C, and that it was the same horse that he

had seen out there with the C on it; that he had heard the defendant ask Seymoure if he got down there with the horses all right; that Seymoure prior to that time had come down there with two horses, and the defendant told Seymoure that he had better watch them, or they would go back; that he had been placed under arrest about the time the preliminary examination of the defendant was held, and was put under bonds to appear before the circuit court; that he had been kept in jail three or four weeks, maybe five, and at the end of that time he was dismissed, without bail. under the condition of testifying against the defendant in this action."

It is contended by the defendant that Fred Seymoure is shown by the undisputed evidence to have been an accomplice, and that his evidence was not corroborated in the manner prescribed by the Code. It is insisted on the part of the state, however, that Seymoure was not an accomplice, but, at most, an accessory after the fact; that the property had in fact been stolen, and was in the possession of the defendant, before Seymoure had any connection with the transaction. We are inclined to agree with the state on this contention. So far as the evidence discloses, the first connection of Seymoure with the stolen property was at the time he took the horses, at the request of the defendant, from the corral on his home ranch to the hay camp. The horse in controversy, it will be noticed from the testimony of Seymoure, was driven into the corral by two employes of the defendant. An accomplice is not defined by our Code, and hence we must take the common-law authorities for a definition. Mr. Wharton, in his work on Criminal Evidence, thus defines an accomplice: "One who knowingly, voluntarily, and with common intent with the principal offend-

er, unites in the commission of the crime." Wharton's Crim. Ev. 440. In People v. Smith, 28 Hun. 626, an accomplice is defined to be "a person involved, either directly or indirectly, in the commission of a crime. To render him such he must in some manner aid or assist or participate in the criminal act, and by that connection he becomes equally involved in guilt with the other party by reason of the criminal transaction." In Jones on Evidence, § 786, an accomplice is defined to be one who knowingly, voluntarily, and with common intent with the principal offender, unites in the commission of a crime. In 3 Rice on Criminal Evidence, § 318, an accomplice is defined as "a person involved, either directly or indirectly, in the commission of a crime. To render him such, he must in some manner aid or assist or participate in the criminal act, and by that connection he becomes equally involved in guilt with the other person by reason of the criminal transaction." Clapp v. State, 94 Tenn. 186, 30 S. W. 214; People v. Bolanger, 71 Cal. 19, 11 Pac. 799; State' v. Light, 17 Or. 360, 21 Pac. 132; State v. Roberts, 15 Or. 197, 13 Pac. 896. Clearly, under the authorities cited, Seymoure does not come within the definition of an accomplice. So far as the evidence discloses, he in no manner participated in the larceny, as the original taking was evidently prior to the time he found the horse in the corral. Not being an accomplice, therefore, it was not necessary that his evidence should be corroborated before a conviction could be had. Section 364 of the Revised Criminal Code reads as follows: "A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not

sufficient if it merely show the commission of the effense, or the circumstances thereof." It will be observed that nothing is said in the section as to an accessory, and an accessory after the fact is not an accomplice, within the rule requiring the testimony of an accomplice to be corroborated. State v. Umble. 115 Mo. 452, 22 S. W. 378; Allen v. State, 74 Ga. 769; Lowery v. State, 72 Ga. 649; People v. Chadwick, 7 Utah 134, 25 Pac. 737. Accessories are defined by our Code as follows: "All persons who, after the commission of any felony, conceal or aid the offender, with knowledge that he has committed a felony, and with intent that he may avoid or escape from arrest, trial, conviction or punishment are accessories." · Section 28, Rev. Pen. Code. In State v. Umble, supra, the Supreme Court of Missouri, in discussing this subject, uses the following language: "Did the court err in refusing to instruct the jury, in behalf of defendant, 'that William Jackson, by reason of the indictment against him as an accessory after the fact, became, in · the eye of the law, an accomplice in the alleged crime, and that the jury should therefore use great caution in weighing his evidence, and that such evidence was not sufficient to convict unless corroborated by other witnesses?' 'An accomplice is a person who knowingly, voluntarily, and with common intent with the principal offender, unites in the commission of a crime.' Wharton's Criminal Evidence, § 440. One who bears this relation to a crime is a principal in the first degree, and is liable to be charged and punished in the same manner as a principal. Rev. St. 1889, § 3944. But it is very· clear that an accessory after the fact, within the meaning of section 3945, is not an accomplice, within the definition of Dr. Wharton. Certain it is, he cannot be

charged or punished as the principal offender. His offense is distinctly his own, and he is liable to a different punishment. Nor can he be indicted jointly with the principal for the principal's offense. Com. v. Wood, 11 Gray 86." There is nothing in the testimony of Seymoure showing that he knew who the horse belonged to, or that he knew that Phillips had actually committed the offense of taking it, or that he aided in concealing the crime or the person committing the crime. The most that his evidence proves is that, when he purchased the horse of the defendant, he knew that it was not the defendant's property. It is not entirely clear, under the provisions of our Code, that the witness Seymoure comes within the definition of an accessory; but, in the view we take of the case. it will not be necessary to pass upon the question at this time.

Seymoure not being an accomplice, therefore, it was competent for the jury to convict the defendant upon his evidence, as the jury were the exclusive judges of the weight to be given to his testimony. In the view we take of the case, it is not necessary to discuss the question of whether or not the testimony of Carpenter constituted sufficient corroboration of the testimony of Seymoure, under the provisions of our Code heretofore quoted.

It is further contended by the defendant that the court erred in denying his motion for a continuance. In Gaines v. White, 1 S. D. 431, 47 N. W. 524, this court adopted substantially the rule laid down by the Supreme Court of California in Musgrove v. Perkins, 9 Cal. 212, which is as follows: "The granting or refusing a continuance rests in the sound discretion of the court below, and its ruling will not be reversed, except for the most cogent reasons. The court below is ap-

prised of all the circumstances of the case, and the previous proceedings, and is therefore better able to decide upon the propriety of granting or refusing the application than an appellate tribunal; and when it exercises a reasonable, and not an arbitrary, discretion, its action will not be disturbed." And the rule thus stated has been approved by this court in Stone v. R. Co., 3 S. D. 330, 53 N. W. 189; Pierie v. Berg, 7 S. D. 578, 64 N. W. 1130; Live Stock Company v. Burris, 10 S. D. 430, 73 N. W. 919; Hood v. Fay, 15 S. D. 84, 87 N. W. 528. In so far as the granting or refusal of a continuance rests in the sound discretion of the trial court, the rule is substantially the same in criminal as in civil proceedings. 4 Ency. Pl. & Pr. 827.

After a careful examination of the affidavits upon which the application for a continuance was based, we are of the opinion that the court did not abuse its discretion in denying the same. The application for the continuance was based upon two affidavits of I. N. Auld, attorney for defendant. The affidavits are lengthy, and no useful purpose would be served in reproducing them in this opinion. In the view we take of the affidavits, there was no sufficient diligence shown on the part of the defendant or his attorney in their efforts to secure the attendance of the witnesses at the trial, or to procure their evidence. The defendant and his attorney evidently relied upon the promises of the witnesses that they would notify the attorney of their whereabouts, and would attend the trial upon being notified of the time when the same would take place. It is true, it appears from the affidavits that subpœnas were placed in the hands of the sheriff or his duty on the 4th day of June, and that the attorney was informed by the sheriff or his deputy that he was unable to serve the subpœnas upon the

witnesses; but when the attorney was so informed, and what
further efforts were made to find the witnesses, does not ap-
pear, though there were 12 days intervening between the
time the subpœnas were placed in the hands of the sheriff
and the trial, which took place on the 16th day of June. It
is quite apparent from the statement of the attorney that the
whereabouts of these two witnesses were unknown to him and
the defendant, and the court could not say that there was even
a probability that, if a continuance were had, the witnesses
would be in attendance at the subsequent term of the court.
In fact, one of the witnesses (Pard Seth) stated to the attor-
ney that he had been informed that a warrant was about to be
issued for his arrest; and, in view of this statement, it is quite
improbable that the attendance of that witness could have
been secured at a subsequent term. In addition to the uncer-
tainty of securing the attendance of the witnesses at a future
term of court, the testimony proposed to be given by them
was merely of a negative character, namely, that the horse
alleged to have been stolen was not upon the defendant's
ranches at or about the time it was alleged to have been stolen.
The evidence proposed to be given was also cumulative, as
the facts proposed to be proven by the witnesses must have
been fully within the knowledge of the defendant, who, under
the statute of this state, is a competent witness in his own be-
half. This of itself, however, would not have been sufficient
ground for denying the continuance if the evidence was really
material, and due diligence had been exercised in procuring it,
and there was a reasonable probability that the witnesses would
be present or their evidence obtained to be used upon the trial
at a subsequent term. But as before stated, we are of the

opinion that no sufficient diligence was shown on the part of the defendant or his attorney to procure the attendance of the witnesses, and there was no reasonable probability that the attendance of the witnesses could be secured or their evidence procured to be used upon the trial in the case of a continuance. A defendant held to answer at the circuit court for the commission of a crime cannot safely rely on the promises of witnesses to appear at the trial and testify, but he must see that they are subpœnaed, or their evidence taken, when it can properly be done, at the earliest possible date, in order to be in a position to ask for a continuance on account of their absence.

Finding no error in the record, the judgment of the trial court is affirmed.

FULLER, J., dissenting.