STATE of Missouri, Respondent,

v.

Roosevelt MARTIN, Appellant.

No. 53264.

Supreme Court of Missouri,
Division No. 2.

June 10, 1968.

Norman H. Anderson, Atty. Gen., Jefferson City, Adam B. Fischer, Special Asst. Atty. Gen., Sedalia, for respondent.

J. Whitfield Moody, The Legal Aid and Defender Society of Greater Kansas City, Kansas City, for appellant.

BARRETT, Commissioner.

Roosevelt Martin, a Negro boy, age 18, and four other Negro boys, Steve John Morris, Calvin Lee Hayes, Torrence Henderson and James Allen Caldwell, were jointly indicted for the forcible rape of Cathy, a white girl, age 18. State v. Harris, 150 Mo. 56, 51 S.W. 481. Upon a separate trial a jury found Roosevelt guilty and fixed his punishment at life imprisonment. In the trial of his case he was represented by hired counsel, a lawyer experienced in the defense of criminal cases. He has been allowed to prosecute this appeal as a poor person, has been furnished a full transcript and is represented in this court by the Legal Aid and Defender Society of Kansas City.

In very brief outline the facts were that on July 16, 1966, about 11:30 in the evening Cathy and her boyfriend Charles, aft-

er attending a show and a party, were parked in his automobile in a secluded area near the ball diamond in Swope Park. Five Negro boys, after a fight with Charles, took Cathy from the automobile, gang-raped her, beat her about the head, broke her jaw and otherwise assaulted her. They also beat and otherwise assaulted Charles. Upon this appeal there is no question as to the sufficiency of the evidence; two questions only have been briefed and argued, (1), it is contended that Damon Jenkins, a state's witness, was an accomplice and that the court prejudicially erred in refusing to give an instruction that the "testimony of an accomplice should be received with a great caution," and (2) that the court erred in overruling his motion to be permitted "to make a transcription of the testimony given before the grand jury."

The first assignment of error has to do with these circumstances: In addition to Cathy and Charles the only other eyewitness to the circumstances surrounding the attacks and particularly to the identity of the five boys involved was Damon Jenkins. Damon said that he spent the evening with Roosevelt, riding around in an automobile driven by Roosevelt. They went to a private party for a short time and about 11 o'clock six of them got in the automobile and Roosevelt drove to the ball diamond in Swope Park. They all got out of the car and in a few minutes they heard "a car pull up and go into the bushes." At first he said "All of us" went toward the bushes but he stopped and stood beside the automobile he came in while the other five "were by the bushes." Shortly Damon heard a girl screaming and he moved over where the five boys were and he saw the white girl lying on the ground and the five boys, including Roosevelt, standing around her. Damon stayed 3 or 4 minutes without touching the boy or girl, and did not spit on either of them, and then returned to the automobile he came in and in five minutes or so the five boys returned and they all left with Roosevelt driving. In about

three months Damon was arrested and answered "a lot of questions" for the police.

As stated, Damon did not say anything to Charles or Cathy and he did not touch either of them and he did not see any of his five companions in the act of raping Cathy. There was no possible doubt, however, as to the fact of the gang-rape and Cathy's injuries, the state's medical evidence corroborated Cathy in detail. Roosevelt's defense, supported by his family and girl friend, was an alibi; that he was at the home of his mother and stepfather with his girl friend from 7 o'clock on July 16th until 3 or 4 o'clock in the morning. Roosevelt's four co-indictees did not testify and since he claimed an alibi he did not testify that Damon took part in the assault on Cathy. Nevertheless the appellant points to the fact that Damon rode to Swope Park with the five boys in an automobile driven by Roosevelt, that he, together with the other five boys, got out of their vehicle and went toward Charles' automobile. Appellant says that all of them, including Damon, "were standing near or over the girl" and all got in Roosevelt's automobile and drove away. In conclusion he says, "even though Jenkins did not assault the young lady or injure her in any way he looked on without protest while some of them were assaulting her. Upon returning to Kansas City, he did not report the matter to the police."

██    In these circumstances it is said that Jenkins was an "accomplice" of the defendant and his associates in the commission of the crime and therefore he contends that the court erred in refusing to instruct the jury "that the testimony of an accomplice should be received with a great caution." As indicated by the direct quotations from the record the appellant's statement that Damon looked on "while some of them were assaulting her" is not supported. It is not necessary to consider the technical distinctions in accessories before and after the fact (RSMo 1959, §§ 556.-170, 556.180, V.A.M.S.), it is sufficient to

say that the latter is not an "accomplice." State v. Umble, 115 Mo. 452, 22 S.W. 378. There is no fact in this record or a circumstance from which it is a fair inference that Damon committed an independent crime, as when the defendant, knowing that there was a jug of moonshine liquor in an automobile, drove it away. State v. Nichols, 330 Mo. 114, 49 S.W.2d 14. And it is not as if he had aided and abetted, even though not shooting the deceased, in standing by and saying, "Shoot the son-of-a-bitch, shoot the son-of-a-bitch." State v. Lunsford, Mo., 331 S.W. 2d 538. An "accomplice" is "one who knowingly, voluntarily, and with a common interest with others participates in the commission of a crime either as a principal or as an accessory before the fact." 21 Am.Jur.2d (Criminal Law) § 118, p. 196; State v. Umble, supra. There is no evidence here of an aiding and abetting by Damon and it is not as if he had been present and in some manner employed the fruits of the crime, as in a jailbreak crawling through the hole sawed by another. State v. Butler, Mo., 310 S.W.2d 952. At most it may only be said that the proof shows Damon's presence at the scene, in the company of those who committed the crime and that circumstance alone is insufficient to establish that he was either a principal or an aider and abettor. State v. Irby, Mo., 423 S.W.2d 800. In State v. Burlison, 315 Mo. 232, 285 S.W. 712, a gang-rape case, there was proof of an accessory before the fact, but the opinion contains a sentence applicable here: "Whatever may be said about the * * * conduct of those on the outside in permitting the ravishment of prosecutrix by one of their number without interference on their part, their mere failure or refusal to interfere * * * did not make such persons guilty of the particular act of ravishment accomplished by another." (285 S.W. 1. c. 715.) In short, there is no fact or circumstance establishing that Damon was an accomplice of either the appellant or his co-indictees and consequently the court did not prejudicially err in refusing to instruct the jury on the subject of receiving his testimony with caution. State v. Kuhlman, 152 Mo. 100, 53 S.W. 416; State v. Umble, supra.

■ The appellant's second point as stated in his brief is that the court erred in overruling his motion "that he be permitted to make a transcription of the testimony given before the grand jury which indicted him." This assignment of error is not spelled out and in his argument the appellant merely quotes his motion and says that the court "abused its discretion in denying appellant's motion." The motion gave only as a reason "that he could not safely proceed to trial until he is given a transcript of the testimony that these witnesses (unspecified and unidentified) gave before the Grand Jury." The record in this case shows only the court's order of February 15, 1967, that the motion "for a transcript was duly considered," counsel for defendant "relied solely" on State ex rel. Clagett v. James, Mo., 327 S.W.2d 278, the order concludes "I have examined this opinion and do not think it sustains petitioner's position." Thus it would appear that the defendant offered no proof and requested no hearing other than counsel's mere colloquy with the court. In his motion for a new trial this is his specific assignment of error, "The defendant was indicted by a grand jury and thereafter he filed a motion for a copy of the testimony of the witnesses that appeared against him. This was refused by the Court."

By reason of its separate concurring opinions, per curiams and dissents, State ex rel. Clagett v. James, 327 S.W.2d 278, was most inconclusive and, according to State v. Cusumano, Mo., 372 S.W.2d 860, led to the promulgation of Criminal Rule 24.24, V.A.M.R. (which, incidentally, was in effect when this case was tried). Insofar as material here that rule provides that "stenographers' transcripts or clerks' minutes showing testimony of witnesses appearing before the Grand Jury" may be made available to state's attorneys. "Otherwise" a "stenographer may disclose matters occurring before the Grand Jury only when

so directed by the court, *upon a finding of necessity to meet the ends of justice,* preliminary to or in connection with a judicial proceeding either civil or criminal or *when permitted by the court upon a particularized showing by the defendant* that grounds may exist for a motion to dismiss the indictment because of matters occurring before the Grand Jury. *Disclosure shall not be permitted* by inspection of transcripts of testimony *for purposes of discovery or as a substitute* for taking depositions of witnesses endorsed on an indictment * * *."

As the résumé of the proceedings relative to the motion discloses there were no grounds for the appellant's motion other than his bare reliance on the James case and that case held, according to its per curiam, "only that respondent *had jurisdiction to exercise his discretion* and decide whether to make that part of the order and therefore we could not prevent him from doing so by prohibition." 327 S.W.2d l. c. 290. The circuit court in that case ordered inspection of the transcript but the order was too broad and even the principal opinion restricted the order. Here, in the language of Criminal Rule 24.24, there was no "particularized showing" or claim of necessity, at most he only said that "he could not safely proceed to trial until he is given a transcript." But as others have noted "a defendant may not have access to the grand jury testimony for use in preparing his defense, or as a substitute for discovery techniques." 1961 Wash.U.L.Q. 382, 394. There is no specification here of just how the appellant was in anywise prejudiced by the court's refusal to sustain his motion. And, finally, it appears from the appellant's cross-examination of Cathy and Charles that he had taken their depositions and so there was no possibility of his being surprised by anything they might say. In summary, under the rule (24.24) and the decisions, manifest abuse of discretion is not demonstrable upon this record and the court did not prejudicially err in denying the appellant's request "to make a tran-

scription of the testimony" given before the grand jury. State v. Cusumano, supra; State ex rel. Clagett v. James, supra; 1961 Wash.U.L.Q. 382; 21 Am.Jur.2d (Criminal Law) § 331, p. 358.

For the reasons indicated the judgment is affirmed.

STOCKARD and PRITCHARD, CC., not sitting.

PER CURIAM:

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.